[Crim. No. 4251.   Second Dist., Div. Three.   Nov. 24, 1948.]

THE PEOPLE, Respondent, v. MASON JAMES GROVER, Appellant.

Stanley L. Avery for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged with the crime of manslaughter. The information alleged, and defendant admitted, two prior convictions of felonies. The jury returned a verdict of guilty. Defendant appeals from the judgment.

The appellant contends, in substance, that the evidence was insufficient to sustain the judgment; that the court committed prejudicial error in failing to declare a mistrial; and that certain questions asked defendant on cross-examination were prejudicial.

On August 23, 1947, about 2 a.m., defendant hired a taxicab which was driven by Elsworth B. Burns. After going several blocks the taxicab stopped near 921 West Sixth Street, Los Angeles. Defendant and the driver alighted and began to scuffle. Three police officers, who were dressed in plain

clothes and were in an automobile in a parking lot on the opposite side of the street, observed the defendant and the driver, and then went to the scene of the scuffle. As the officers approached, defendant and the driver separated. One of the officers spoke to the driver, who was then standing with his arms "hanging" by his sides. As the driver started to reply, defendant took one step forward and struck him with his right fist, knocked him down, and caused his head to strike the pavement. The driver was rendered unconscious and died shortly thereafter without regaining consciousness. He was 5 feet 6 inches in height, and weighed 155 pounds; and defendant was 5 feet 11 inches in height, and weighed about 185 pounds.

One of the police officers, who witnessed the fight, testified that he and the two other officers watched the scuffle until they "saw the cab driver's hat fly off," and then the officers started to cross the street; that he heard one of the men say something about 50 cents but he did not know which one it was, and he heard the other man say something about calling the police; that the officer who reached the scene first, showed his police badge, and the two men separated; that that officer then stood "completely between" the men and asked the driver "What's going on here?" and at that time defendant delivered a right-hand blow that struck the driver in the mouth and knocked him off the sidewalk; that his head struck the street and made a loud, popping noise; that the witness then asked defendant what the trouble was; that defendant said that the driver was trying to rob him and had also accused him of urinating in the taxicab; that the defendant's trousers were "unzipped," and there was a wet spot on the right-hand side on the back of the seat and also on the floor of the taxicab; that after the ambulance arrived and the driver was placed in it, "we" examined defendant for cuts or bruises; that since defendant had stated that he had been struck they looked "all over his face and all over his hands" for cuts and bruises but did not find any; that they noticed only one bruise on defendant and it was on his right hand in the center of the knuckles; and that defendant had $346 on his person at the time of his arrest.

Another police officer, who had witnessed the fight, testified in substance the same as the above mentioned officer had testified. He also testified that he was the first one who arrived at the scene and that he stepped between the men; that he was facing directly toward the driver, and as the

driver started to speak to him defendant's right hand "shot past" the left shoulder of the witness and hit the driver in the face, knocking him "down in the street"; that he asked defendant why he struck the man, and that defendant answered, "He is a no-good pimp cab driver, and he was trying to rob me"; and that the witness found a 50-cent meter receipt on the floor in the back of the taxicab.

Another police officer, who had witnessed the fight, testified in substance the same as the other officers, except that he testified that when he asked defendant why he had struck the driver, the defendant replied that the driver "had promised to take him to see a girl"; and that he had been driving him around for a "couple of hours" and hadn't "produced the girl," and that the driver tried to rob him.

The surgeon who performed the autopsy testified that an external examination of the deceased revealed, in addition to certain minor injuries, a deep laceration about 1½ inches in length on the back of the head; that an internal examination revealed a massive hemorrhage in and around the brain, and a large fracture in the back portion of the head; that the cause of death was the contusion of the brain and the hemorrhage in and around it, due primarily to the fracture of the skull; and that in his opinion the fracture of the skull was caused by blunt force which would consist of hitting or being hit by a flat object.

The defendant testified that he arrived in Los Angeles on August 21, 1947, at which time he had about $500 in his possession; that on August 23d, about 1:15 a.m. he went to see a friend of his who was manager of a club on Main Street; that they had a drink, and he left the club about 1:45 a.m., and walked outside to the curb and started to count his money; that at that time the taxicab stopped at the curb; that the driver got out and asked him if he wanted a "cab," and that defendant said "No"; that the driver then asked him if he would "like to go see a good-looking girl," and defendant asked how much it would cost; that the driver replied "$20," and defendant said "o.k."; that they got in the taxicab and went to West Sixth Street and stopped next door to the hotel where the driver was taking him; that the driver got out of the taxicab, and said "Give me the 20 bucks," and defendant said "No, I won't give it to you first"; that the driver said defendant urinated in his cab; and demanded $5.00, which defendant refused to pay; that the driver said "I will take it out of your hide," and struck defendant, knocking him down

on his knee; that while defendant was still on his knee the driver struck him two or three times; that defendant had his money in his shirt; that the driver "reached over" and defendant grabbed him by the shoulder and pulled himself up; that about that time the police officer stepped between them; that the officer asked "What is this all about?"; that the defendant replied, "That dirty pimp cab driver——" and at that time the driver had his "knuckles doubled up" and "started to swing" and that defendant struck him first; and that he had paid the driver 50 cents for the cab fare. Defendant also testified that at the time the driver struck him, the blow broke a tooth; that a few years ago he had been a prize fighter and had engaged in four or five professional fights; that his left hand had been totally paralyzed about two years; that he had been convicted of two felonies—one conviction "concerned" assault, and the second conviction was violation of the Mann Act.

Two witnesses, called on behalf of defendant, testified that they saw the scuffle and saw the three police officers arrive at the scene, but they did not see what occurred after the officers arrived.

Appellant's contention that the evidence is insufficient to sustain the judgment cannot be sustained. His argument in support of that contention is, in effect, that he struck the fatal blow in self-defense. Regardless of which person was the aggressor at the time the fight began, the evidence is undisputed that deceased and appellant had been separated before the fatal blow was struck, and that deceased was standing with his arms "hanging" at his sides. There was no evidence, except appellant's testimony, that deceased indicated in any manner he was then about to strike appellant or that he desired to resume the fight. The only eyewitnesses to the fatal blow were the three police officers, all of whom testified that appellant struck the blow while deceased was attempting to answer a question asked by one of the officers. It is improbable that appellant, who was larger than deceased and had had pugilistic experience, was in fear of bodily harm, especially in view of the fact that three police officers were present and one of them was standing between appellant and the deceased at the time the blow was struck. The evidence supports the finding that appellant did not act in self-defense in striking the fatal blow.

Appellant further contends that the court committed prejudicial error in failing to declare a mistrial after a police

officer had volunteered certain testimony concerning a "convict registration." The deputy district attorney asked the police officer on direct examination: "Did you have further conversation with him?" The police officer replied, "Yes. We searched the defendant, and on him I found a convict registration ——." Counsel for appellant then asked the court to declare a mistrial, whereupon the attorneys and the reporter approached the bench and a discussion was had out of the hearing of the jury. During the discussion the deputy district attorney stated that the "remark" was improper but he did not think it was "prejudicial in view of the fact that the Jury were questioned on that on voir dire"—that during the examination of the jurors counsel for defendant "brought out the fact that the defendant was convicted of a felony." Counsel for appellant then replied, "That isn't evidence when you mention it on voir dire." The judge then said he was "inclined to agree that it may be prejudicial," and that "[A]ll we can do is grant a mistrial." The deputy district attorney said, "Well, let's declare a mistrial and start this with another Jury." After further discussion (which was not reported) counsel for defendant said: "I waive my right on behalf of the defendant to enter any objection, and I withdraw my request for a mistrial." Thereupon the court instructed the jury to disregard entirely the "last remark of the witness," and that said remark "has no bearing on the issue of the case." (The attorney who represented appellant at the trial is not his present attorney.) Appellant asserts that he did not hear said discussion, and "that it was an error for the Court to permit the trial to proceed beyond that point unless the appellant himself was expressly informed of his right [to have a mistrial declared] and chose to waive it." The statement of the police officer that he found "a convict registration" in the possession of defendant was not prejudicial in view of the fact that appellant testified on cross-examination that he had been previously convicted of two felonies. Irrespective of the voluntary statement of the police officer that he found a "convict registration" in possession of appellant, the information that appellant had been previously convicted of a felony was properly before the jury on cross-examination of appellant. As above shown, appellant presented himself as a witness and testified, and on cross-examination the deputy district attorney asked him if he had been convicted of a felony. Appellant replied that he had been convicted twice of a felony—that one conviction

"concerned" assault, and the other was violation of the Mann Act. ■ Even though appellant had admitted the allegations of the information that he had been previously convicted of two felonies, it was not error to ask him on cross-examination if he had been convicted of a felony. (*People* v. *Granillo*, 140 Cal.App. 707, 714 [36 P.2d 206].) ■ Also the cross-examination was properly extended to ascertaining the character of the offenses involved in the previous felony convictions. (*People* v. *Brain*, 17 Cal.App.2d 141, 143 [61 P.2d 806].) ■ Any prejudicial effect of the police officer's testimony, regarding the "convict registration" was removed by appellant's testimony on cross-examination. It was stated in the case of *People* v. *Brain, supra,* at page 144, " 'The district attorney had, under these circumstances, no right to refer to the prior conviction, as the defendant had not at that time chosen to take the stand in his own behalf. (Pen. Code, sec. 1025.) Here, however, he later became a witness on his own behalf, and it then became proper to ask him if he had ever been convicted of a felony for the purpose of impeachment. (8 Cal.Jur., p. 647.) The question was asked and the defendant admitted that he had suffered such a conviction. Erroneous admission of evidence of a fact subsequently proved by defendant's testimony is harmless.' " (*People* v. *Booth*, 72 Cal.App. 160, 166 [236 P. 987].)

Furthermore, it appears that counsel for appellant had stated, on *voir dire* examination of jurors, that appellant had been previously convicted of a felony. Also, as above shown, the appellant withdrew his request that the court declare a mistrial.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1948.