[Crim. No. 6850. Second Dist., Div. Two. Oct. 3, 1960.]

THE PEOPLE, Respondent, v. ROBERT B. McCOY, Appellant.

Harold J. Ackerman for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry Sondheim, Deputy District Attorneys, for Respondent.

NOURSE, J. pro tem.*—Defendant and one Pilcher were by information accused of a violation of section 211 of the

---

*Assigned by Chairman of Judicial Council.

Penal Code, robbery, on two counts. He was charged with being armed at the time of the commission of each offense. The information also charged that appellant had suffered three prior felony convictions.

When the cause was called for trial, appellant, outside the presence of the jury, admitted the third prior charge (conviction on the 10th day of June 1952 of the crime of robbery).

At the trial the jury returned a verdict that the defendant was not guilty of the crime charged in count I, found him guilty of robbery in the first degree of the crime charged in count II, and further found that he was not armed at the time of the robbery.

In view of the nature of the errors asserted by the appellant, it will be necessary to make a somewhat detailed statement of the evidence upon which the jury found appellant guilty.

One Gervickas testified that on November 16, 1958, he was employed by the Western Union as relief manager of the office at 3825 Wilshire Boulevard, Los Angeles; that on that day a man entered the premises with a gun and ordered the witness to fill a paper bag. He identified this person as the defendant Pilcher. That he placed some bills in the bag and asked Pilcher if he wanted the change and received a negative reply. That Pilcher took approximately $34 but that nothing other than money was taken. Gervickas further testified, as did a customer who entered the office during the robbery, that they did not see appellant at any time; so far as they knew, he had nothing to do with the holdup.

Fusako Kataoka testified that on December 16, 1958, she was employed by the Western Union at its office at 534 South Spring Street, Los Angeles; that at approximately 9 p.m. on that day the defendant Pilcher entered the office where she was employed; that after making certain inquiries as to telegrams Pilcher pointed a gun at her, told her to go to the back room and lie on her stomach; that she complied; he tied her arms and ankles and he then took her key from her and went to the front office. While she was tied, she attempted to reach the burglar alarm and "came face to face" with the second bandit. She testified that appellant resembled the second bandit; when asked if she could say positively that the appellant was the second bandit the witness stated "Well, he's wearing the same sort of jacket I've seen," and on cross-examination she stated that the second bandit had on dark black-rimmed glasses; that the second bandit was about 5 feet 10 inches; weighed about 150 pounds and that his hair appeared

to be darker and longer than appellant's was at the time of trial. She "couldn't be positive" that he was the man on counsel's left; "*He resembles the man.*" She further testified that the man she had seen was about the height of appellant; she estimated appellant's height to be 5 feet 10 inches and his weight at 150 pounds. The evidence further showed that upon inventory being taken, it was found that there was a large number of traveler's checks and American Express money orders of various denominations missing. (Italics added.)

One Alfred Gutt testified that in March 1959 he cashed a $100 American Express money order; the money order was endorsed "Robert McCoy," and the evidence showed this endorsement to be in the handwriting of appellant; the check was countersigned on behalf of the American Express Company "Clyde Landers"; this signature was also proven to be in appellant's handwriting. Gutt would not identify the appellant as the person for whom he cashed the money order. It was shown to be one of those stolen at the time of the robbery charged in the second count. The wife of the witness positively identified appellant as the person who presented the $100 money order which was cashed by her husband. At the time of appellant's arrest, his car was searched and in a bag in the rear of the car there was found, among other things, three money orders which were proven to be among those stolen; the countersignature of "Clyde Landers" thereon had been forged by appellant.

Officer Killeby, one of the arresting officers, testified to a conversation that occurred between appellant, the witness and another officer immediately after the arrest.

So far as pertinent to the questions raised upon this appeal, this testimony is as follows: "Sergeant Lightner asked McCoy how many robberies he had committed, and defendant McCoy replied that he had only committed the one robbery. *I at the time asked him if he wasn't forgetting one on Wilshire Boulevard.* He thought a moment and then he said 'Well, *I didn't consider that one a robbery* because *I didn't go in. I just drove the car.*'

"Sergeant Lightner then asked him if or why he had started committing robberies, and his answer to that was that his girl friend was in need of an operation that costs approximately $2,000 and that he couldn't make that much money working. Sergeant Lightner asked him why he had—or *first he asked him what they had done immediately after the robbery,* and

he stated, *the defendant stated that they had gone to Las Vegas where he had cashed the majority of the checks. . . .*

"Sergeant Lightner asked him how come he had done such a foolish thing to sign his own name [with reference to a check cashed at the liquor store in Glendale], and he said he just didn't care any more." (Italics ours.)

During this conversation, as related by the witness, appellant admitted that he had cashed some of the stolen checks in Las Vegas and elsewhere and admitted forgery of the name "Clyde Landers" on a number of them.

Appellant's codefendant testified that he alone had committed the robbery charged in count I of the information; that he had committed the robbery charged in count II of the information along with another person whom he refused to identify; that he picked up the appellant about 10 o'clock on the evening of the second robbery, December 16th; that he gave appellant "a lot of traveler's checks"; that he told appellant that he had received the checks "from a guy"; told appellant how to make out the checks, but "didn't tell him that he had robbed any place." Appellant testified that he had nothing to do with the crime charged in the first count and was not near the scene of that robbery; that he met the defendant Pilcher at about ten minutes of ten on the night of the second robbery; that they had not made any previous plans, but at Pilcher's invitation they left for Las Vegas about 10:30, that he first saw the money orders and traveler's checks which had been received in evidence and identified as having been stolen in the second robbery, at about midnight; that at that time Pilcher gave him some American Express money orders and traveler's checks and later he cashed some of them. He denied that he had ever told the officer that he had participated in the commission of either offense charged.

On cross-examination appellant, upon being questioned, admitted that he had been convicted of a felony, to wit: robbery, and for that had served a term in the penitentiary. He was then asked: "What did you rob?" To this question, the following objection was made: ". . . I object to that on the grounds that for impeachment purposes that you can inquire as to the offense but not the nature." The objection was sustained.

Out of the presence of the jury the district attorney then stated: I wish to offer and prove that . . . the answer to that is that he robbed a Western Union office in the County of Los Angeles. THE COURT: Scheme and method of operation; is

that your theory? Mr. Busch: Show that this man on a prior occasion has robbed a place which is the same subject of the robbery here. The Court: Objection will be overruled. Mr. Friedman: Your Honor, may I make this comment, that those robberies are committed in the same technique or MO and I fail to see that by reason of a prior arrest or conviction related back as far as eight years past—I think it was six years— Mr. Busch: I think it was 1952. Mr. Friedman: 1952. Seven years ago. Mr. Busch: He did not get out until 1958. The Court: I am not going to argue that any further. Objection will be overruled. The court will allow it.''

On being further examined, the witness testified that the felony of which he had been convicted was the robbery of a hotel and was not the robbery of a Western Union office. Later in the trial the district attorney produced the record of the criminal proceeding in which appellant had been convicted in 1952. Whereupon the following occurred:

''Mr. Busch: Your Honor, might I state at this time I have Superior Court file of Los Angeles County, number 148,292, of Robert Burlington McCoy, this defendant, and it indicates that on May 13, 1952, the defendant did plead guilty to Count II of that Information, which charged a robbery of Adelta Gluesing, who, if the Court please, was a clerk at the Western Union office at 534 South Spring Street. Mr. Friedman: I examined the file and I am satisfied of that. The Court: Do you want to introduce that in evidence, then. Mr. Friedman: We can stipulate in open Court. Mr. Busch: Would that be satisfactory? The Court: All right, that is satisfactory. Mr. Busch: Well, he wanted to indicate—now I don't know whether he wants to stipulate. Maybe I will put the defendant on the stand. Mr. Friedman: You can call him again. The Court: Further cross examination.''

The appellant was then recalled to the stand and testified that he had pleaded guilty to robbing the Western Union office at 534 South Spring Street. (These are the same premises involved in count II of the present information.)

Appellant asserts that the evidence is insufficient to sustain the judgment. Concisely stated, his contention is that the identification of appellant by the witness Fusako Kataoka was not positive but equivocal, and that the statements made by appellant to the arresting officer, as related by the witness Killeby, did not constitute an admission by him of participation in the robbery of the Western Union office on Spring Street.

The testimony given by the witness Kataoka did not constitute a positive identification of the appellant. However, from her testimony, considered as a whole, the jury might well have found that appellant was the second person whom she saw at the time of the robbery.

[■] Assuming, however, that her testimony was not sufficient to amount to an identification of appellant, we are convinced that his statements to the arresting officer, as testified to by the witness Killeby, were clearly an admission of participation in the Spring Street robbery. It is true that the place of that robbery was not directly identified in the conversation, but in the conversation, two robberies were mentioned; the appellant expressly admitted participation in one robbery and stated that he did not consider that he was a participant in the Wilshire Boulevard robbery because he only drove the getaway car and did not enter the premises. As to the robbery he admitted, he stated that immediately after it he had gone to Las Vegas, where he cashed a majority of the checks. In view of the fact that the evidence showed that a large number of money orders and traveler's checks were taken in the Spring Street robbery and none in the Wilshire robbery, and that appellant testified that on the night of that robbery he received a large number of these checks from the defendant Pilcher, and that they took these checks to Las Vegas where he cashed a number of them, his admissions of a robbery to the arresting officers could only have referred to the robbery of which he was convicted. This admission, in itself, identified him as one of the robbers, and sustained the jury's finding that he had participated in the crime. (*People* v. *Gould*, 54 Cal.2d 621, 625 [7 Cal.Rptr. 273, 354 P.2d 865].)

[■] Appellant contends that the trial court erred in failing to instruct the jury *sua sponte* concerning the law respecting circumstantial evidence. He contends that since Kataoka's identification of him was equivocal, proof of his connection with the crime depended upon testimony as to his extrajudicial admissions, and that as such testimony was but indirect evidence of the truth of what he had stated, the evidence upon which his conviction depended was circumstantial. This contention is fully answered by the Supreme Court in *People* v. *Gould, supra,* where the facts were substantially on all fours with those in the case at bar. [■] There the Supreme Court, in disposing of a like contention to that here made said, in part, as follows (p. 629) : "We have concluded, for reasons that appear below, that the requested instructions

do not apply to all types of indirect evidence and that they were properly refused in the present case.

''The requested instructions clarify the application of the general doctrine requiring proof beyond a reasonable doubt to a case in which the defendant's guilt must be inferred from a pattern of incriminating circumstances. [Citations.] They deal with proof of 'each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt,' the use of evidence 'susceptible of two constructions or interpretations,' and the relationship required between 'the proved circumstances' and possible hypotheses. Such instructions should not be given when the problem of inferring guilt from a pattern of incriminating circumstances is not present. Testimony as to an extrajudicial admission is indirect evidence of the matter admitted because the jurors are called upon not only to believe what is said in court—that the admission was made—but to infer that the admission was true. [Citation.] Thus such testimony is indirect evidence only because it is hearsay. [██ The requested instructions on circumstantial evidence clearly do not refer to the problem of evaluating hearsay. They are unnecessary, and may be misleading, when the jury is to consider only whether the admission was made, and if made, whether it was true.''

 Appellant asserts that the court erred in permitting the district attorney to examine the appellant as to the place at which the robbery of which he had been convicted in 1952 had occurred, and to thereby establish that the place was the same place as the premises involved under count II of the information. This assignment of error is meritorious.

It is to be noted that the examination in question, which we have heretofore set forth in full, occurred after the district attorney had established, through admissions of the appellant, that he had been convicted of a felony, and that the felony was robbery. This was all that the prosecution was entitled to prove by way of impeachment. (*People* v. *Newman*, 102 Cal. App.2d 302, 307 [227 P.2d 470]; *People* v. *Grover*, 88 Cal. App.2d 850, 856 [199 P.2d 384].)

The evidence with which we are now concerned was not offered for the purpose of impeaching the appellant, but offered as proof that he had participated in the robbery charged in count II of the information, and was received by the court for that purpose. When evidence is offered that proves crimes other than that charged, it must be examined with care to determine whether or not it is relevant

to the crime for which the appellant is on trial (*People* v. *Peete,* 28 Cal.2d 306, 316 [169 P.2d 924]), and only if, after a careful examination, the court determines that proof of the commission of the other crime tends to prove a fact material in the case on trial, may it be admitted (*People* v. *Peete, supra,* at 315).

■■ Where the evidence is offered to prove that the defendant was a participant in the crime charged, and for which he is on trial, "the evidence of other offenses must tend to show that the offense for which the defendant is being tried is part of a general plan or system of criminal acts; they must be part of a chain and in consequence so linked as to be necessarily connected with the system or general plan." (*People* v. *Channell,* 136 Cal.App.2d 99, 113 [288 P.2d 326].) There must be " 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. . . .' " (2 Wigmore on Evidence, 202, as quoted by the court in *People* v. *Channell, supra,* at 114.)

■ Here the testimony elicited from the appellant only showed that the appellant had formerly robbed the same place. The prosecution did not prove, or offer to prove, any of the facts or any of the circumstances of the first robbery. There was, therefore, no evidence from which the jury could find a concurrence of common features so as to draw the inference that both crimes had been committed by the same person. We are not convinced, however, that the admission of this evidence resulted in a miscarriage of justice, or that there here exists an equal balance of reasonable probabilities that, except for the error, the jury would have acquitted the appellant of the crime charged. This being true, we may not set aside the judgment of conviction. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Purvis,* 52 Cal.2d 871, 887 [341 P.2d 22].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 30, 1960.