[Crim. No. 1110.   Fourth Dist.   Apr. 26, 1956.]

THE PEOPLE, Respondent, v. ERNEST SANFORD
LANCEY, Appellant.

Ernest Sanford Lancey, in pro. per., and John P. Carroll for Appellant.

Edmund G. Brown,, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with a violation of section 459 of the Penal Code, it being charged that he entered a dwelling with the intent to commit theft on September 6, 1955.  He was also charged with two prior convictions, one for burglary in the second degree and one for a violation of section 503 of the Vehicle Code.  He pleaded not guilty, and a jury found him guilty of burglary in the first degree.  He appeals from the judgment and from an order denying his motion for a new trial.

On the evening of September 6, 1955, while James Brady was sitting in the front yard of his home in Indio he heard his back door slam twice.  This was around 8 p. m.  He entered his house but did not see anyone although he noticed

that the light on the back porch was out, and turned it on again. About an hour later, he reentered his house and found that his watch, which had been lying on a stand by his bed, was missing. He later discovered that 16 cartons of Camel cigarettes and a pillow slip marked "Brady-102" were also missing. He reported the matter to the police.

The appellant was observed by a witness between 7:30 and 8 p. m. walking down the alley behind the Brady house, empty-handed. Ten or fifteen minutes later this witness saw the appellant return along this alley with a white "bag" in his right hand. Around 10 p. m. that night the appellant approached a bartender at a club in the same block as the Brady house, and offered to sell him cigarettes at $1.00 per carton. The bartender bought two cartons. About the same time the appellant offered a bartender at another nearby club some cartons of cigarettes but did not mention the price when the bartender refused to buy. About the same time a Mr. Humbarger, while on the street, purchased five cartons of Camel cigarettes for $5.00 from an unidentified man. These cigarettes were in a white bag and the bag was turned over to Humbarger. Humbarger immediately left the bag and the cigarettes with the bartender to whom the appellant had sold two cartons of cigarettes, while he went to get something to eat. The bartender placed the bag with its contents under the bar. The next morning the police picked up these cigarettes which, with the watch taken from Brady, were in the pillow slip marked "Brady-102." Around 10 p. m. on the night of the 6th, the appellant was also observed near a trash can in the next block from the first club mentioned, wiping something from the ends of cartons of cigarettes.

At 4 a. m. the next morning (the 7th) Mrs. Brady heard her back door slam. She went to a window and saw the appellant outside the house near a box containing some tools. He picked something out of the box and thinking the man was going toward the front of the house she ran to a front window. She then heard a crash and a light over the back door and the glass in the back door were knocked out. She identified the defendant as the person who was at her house and described his attire, which fitted his clothing at the time he was arrested.

The appellant was arrested at 5 a. m. on September 7 when he was found asleep in an automobile near the Brady home. About 10:30 a. m. on that day he was questioned

by the officers as to the cigarettes he had been selling. He first said he had bought them from a man on the street, and later stated that he had bought them from a man at a bar and took delivery of them behind a garage. At that time he offered to plead guilty to the charge of petit theft but refused to plead guilty to a felony charge, although he did not directly deny that he entered the Brady house.

The appellant took the witness stand and testified that he arrived in Indio on the morning of the 6th, obtained some liquor, and sat around the depot with a stranger who offered to sell him between 20 and 25 cartons of cigarettes; that he left the stranger and obtained a room at a hotel, where he registered under the name of Taylor; that he did not smoke this brand of cigarettes and sold two cartons to the bartender; and that he was intoxicated on that evening but was in full possession of his faculties. He also denied that he had been in the Brady house or in that alley. He admitted his previous convictions and also admitted that he had had a conversation with the police officers on the morning of the 7th, but stated that the officer's version of the conversation was exaggerated.

Appellant's sole contention is that the court erred in admitting into evidence certain testimony of the arresting officers concerning appellant's statement to them as to prior offenses and improper conduct on his part. It is argued that while evidence of other offenses may be admitted where it has a bearing on the question of intent such evidence is not admissible where it merely tends to prove an inclination toward crime, and that the matter objected to falls in that category. One of the officers testified that during the conversation with the appellant on September 6 he asked the appellant as to his occupation and how he made his living, and that "he told me it was usually by rolling drunks, or by taking money from drunks, shoplifting, and he said something about having a woman and that she was working for him, who is now in jail in Los Angeles, and other illegal means. He named numerous things that he had done in the past." The other officer testified that in that conversation, when asked what his occupation was, the appellant "said he was a thief." In support of the contention that this was reversible error the appellant cites *People v. Canfield,* 173 Cal. 309 [159 P. 1046]; *People v. Clark,* 55 Cal.App. 42 [203 P. 781]; *People v. Arlington,* 123 Cal. 356 [55 P. 1003]; *People v. Wallace,* 89 Cal. 158 [26 P. 650]; *People v. Mohr,*

157 Cal. 732 [109 P. 476] ; *People* v. *Whiteman,* 114 Cal. 338 [46 P. 99] ; and *People* v. *Dugat,* 77 Cal.App. 263 [246 P. 344]. In the first of these cases, a new trial had been granted and the court pointed out that section 4½ of article VI of the Constitution might well have been applied had a new trial been denied. In the second of these cases, not only were the facts very different but other grounds for reversal existed. In two of the other cases the question of using an assumed name was not involved as it was here. Under many recent cases the question as to whether such an error was sufficiently prejudicial to justify a reversal has depended upon the facts of the particular case.

In the instant case, the evidence of appellant's guilt was very convincing and might well be described as overwhelming. The general character of the appellant and his tendency or inclination toward crime quite well appeared from his own testimony before the jury, and the matters objected to although inadmissible were, in fact, no more than cumulative. We are far from convinced that a miscarriage of justice has occurred and, in view of the convincing evidence of the appellant's guilt, it would not be reasonable to assume that the jury would have acquitted him if that evidence had not been received. Under the circumstances of this case, and in view of section 4½ of article VI, it must be held that no such prejudice appears as would require a reversal. (*People* v. *Tokich,* 127 Cal.App.2d 639 [274 P.2d 226] ; *People* v. *Martin,* 127 Cal.App.2d 777 [274 P.2d 509].)

The judgment and order are affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1956.