[Crim. No. 7233. Second Dist., Div. One. Jan. 25, 1961.]

THE PEOPLE, Respondent, v. ELLINGTON JORDAN, Appellant.

Ellington Jordan, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and C. Michael Gianola, Deputy Attorneys General, for Respondent.

WOOD, P. J.—Defendant was accused of committing robbery while he was armed with an automatic pistol. In a trial by jury he was convicted. He appeals from the judgment.

Appellant contends that the evidence was insufficient to support the judgment; that he was not properly represented by his counsel; that an officer, while testifying, improperly referred to appellant's being on probation; that the court erred in receiving in evidence a pistol that was not used in the alleged robbery; the court erred in failing to have a handwriting expert examine a diagram which purportedly was drawn by appellant.

Mr. Wheeler testified in substance as follows: On October 8, 1959, about 10:30 p. m., while he and his wife were walking in a northerly direction on the sidewalk on Jasmine Street in Los Angeles, he noticed that a Buick automobile, in which there were three persons, was traveling very slowly in a southerly direction on that street. A chrome strip was missing from the side of the automobile. About three minutes later he noticed that the same automobile, in which there were only two persons, was traveling again very slowly in a southerly direction on the same street. The witness and his wife continued walking northerly up the hill over which the automobile had just traveled as it proceeded southerly. When they had gone a short distance after the automobile had passed them the second time, a Negro with a gun in hand stepped out of the nearby shrubbery and said, ''This is a robbery. Throw your money to the ground.'' The man was wearing a mask which was a polka dot bandana or scarf that covered the lower half of his face. His hair was long and ''slicked back.'' He was pointing an automatic pistol at the witness. When the witness did not throw his billfold down, the man said, ''Throw the billfold down. I'm serious.'' At that time the man, who was 5 feet from the witness, cocked the gun. Then the witness threw his billfold, which contained $6.00, to the ground. Then the man told the victims to walk across the street. They walked across the street and the man ran to and entered the automobile which was at the street corner. The witness and his wife returned to their home which was about half a block away, and the wife notified the police. The witness entered his own automobile and attempted to pursue the robber. About 11:15 p. m. (approximately 45 minutes after the robbery) while the witness was at the Wilshire police station making a report, he was notified that officers had apprehended three suspects and had them in custody at the West Los Angeles police station. He (witness) went to that station and identified the defendant Jordan as the person who robbed him. The defendant Jordan who is in the courtroom is the person who robbed the witness.

Mrs. Wheeler testified in substance the same as Mr. Wheeler had testified with respect to the robbery, except that she said the robber picked up the billfold, and she also said that she could not identify the defendant as the robber.

Officer Reid, one of the arresting officers, testified as follows: In the evening of said October 8 he received radio information that a robbery had occurred and that traffic patrol officers had

apprehended three suspects who were in a Buick automobile at Wilshire and Sepulveda Streets. In response to a call from those traffic officers, Officer Reid and other investigating officers went to the Buick automobile—arriving there about 11:15 p. m. Defendant was in the rear seat of the automobile and a polka dot scarf was on the rear seat. Officer Reid asked defendant why the scarf was there. He replied that he kept it with him at all times and he used it to tie his hair down at night. Defendant's hair was quite long and slicked back in "ducktail style." The officer took the three suspects to the police station. Defendant said that he did not know anything about the robbery, that he had been riding in the automobile with the two other boys and he had been asleep on the rear seat, and that he had no idea what they had done or where they had been. Defendant also said that at one time the other boys had asked him if he wanted "to go on a stickup with them," and he had replied that he did not want to go and he was already on probation for that same thing. (When that last statement was made the deputy district attorney requested the judge to strike the part thereof concerning probation and to admonish the jury to disregard the statement. Counsel for defendant asked the judge to declare a mistrial on the basis of the statement. That motion was denied. The judge admonished the jury to disregard the statement.) Officer Reid testified further: He was present when Mr. Wheeler came to the police station where the three suspects were in custody. At that time Mr. Wheeler identified defendant Jordan as the robber.

Officer Peterson, one of the investigating officers, testified: On October 9, 1959, he had a conversation with defendant wherein defendant denied that he was involved in the robbery. On October 11 the witness had another conversation with defendant wherein defendant freely and voluntarily admitted that he committed the robbery. On said October 11 the defendant, in the presence of the witness, freely and voluntarily wrote and signed a document which was received in evidence as Exhibit 4.

Said Exhibit 4 stated in part that on October 8, 1959, defendant left home about 7 p. m. and he was asleep until the car stopped and then he got out of the car and told them he knew a girl who stayed there. "So they went to turn around the block, not knowing what I was going to do. So I walked up to the man and lady and told them to give me their money, but I did not have a real gun. I only had a piece

of wood that looked like a gun, and then I pulled . . . on my wrist, on my watch, as to make a sound like a gun when it clicks. At that time Sidney [one of the other men] . . . came down the street to see what had happened. But I started running . . . . We started for home, and that's when they stopped us and told us what had happened, and that's the one and only robbery I have had anything to do with.''

Officer Reid testified further: After defendant had written the document on October 11, he (defendant) drew a diagram indicating a street and street intersections. Defendant, in using the diagram to explain what happened on the street, stated in substance as follows: When he was in the Buick with the two boys he saw a man and woman on the street; thereafter the driver of the Buick stopped the car at a place where the man and woman could not see defendant get out of the car; after defendant was out of the car, it was driven around the corner and parked; then defendant walked toward the man and woman and ''pulled out this piece of wood and demanded money''; when the man did not give the money, the defendant threatened him by snapping defendant's ''wrist band so that it sounded like he cocked the gun''; then defendant took those persons across the street and ran to and entered the Buick; one dollar was in the wallet which he had obtained; he took the dollar, and then he threw the wallet out the window.

Officer Reid testified further: On October 12, 1959, in the presence of the witness, the defendant wrote and signed a document which was received in evidence as Exhibit 6.

Exhibit 6 was in substance as follows: On October 8, 1959, about 7 p. m., he left home with the two other boys and had a few drinks; then they started for the party; after they had driven a long way, they started looking for the party and while driving on Jasmine Street ''this lady and man looked at us very hard . . . so we kept on going and turned right; at about this time we realized that we were lost, and we ended up down by the beach. . . . We drove for about 20 minutes, and then we were stopped by the police and were taken to jail for robbery. . . . Maybe . . . these people were robbed but not by me. I will try and be as cooperative as I can, but my mother told me not to lie . . . . So that's the reason for writing this story over again as it really happened. Plus I was to go out to see Wynn the next 2 weeks to work and make over $1,000, and I would not rob anyone, not after I had just did [sic] 23 months for strong arm.''

After the document last above mentioned had been read at the trial, the judge instructed the jury to disregard any statement therein concerning any other offense; and that in spite of what defendant had written in the document, he has not been convicted of a felony. (It seems that defendant had been involved previously in a juvenile court case.)

Officer Reid testified further: Defendant said that he had thrown the "wooden article" (which had the appearance of a gun) into a parkway at the side of a street. Later the defendant said that it was not a wooden article or gun but it was an air pistol like those used in shooting galleries. He (defendant) said that the scarf (or bandana) was his property and that he uses it to tie around his hair when he sleeps.

The deputy district attorney recalled Mr. Wheeler as a witness. Then the deputy exhibited an automatic pistol (which was not used in the robbery) and asked that it be marked Exhibit 7 for identification. It was stipulated that there was no implication that that pistol had anything to do with "this occurrence." The judge said that the pistol would be so marked "with the understanding it is not any gun that was used in this alleged robbery." The deputy asked Mr. Wheeler if that pistol resembled the weapon he saw the defendant use on October 8. He replied in the affirmative, and he stated further that it was of the same appearance as the gun he saw in defendant's hand.

Defendant testified that he was not the person who robbed Mr. Wheeler; he (defendant) wrote Exhibits 4 and 6 (the written documents) and he drew Exhibit 5 (the diagram); he wrote Exhibit 4 (the document purporting to be a confession) because he wanted to protect Correia, who was one of the boys referred to in the case. Defendant also testified that the drawing or diagram did not "look like my [his] handwriting."

Appellant argues, with respect to his contention as to insufficiency of the evidence, that the testimony of Mr. Wheeler was not reliable in that (1) the witness first said that he identified appellant by appellant's hair and eyes, and later he said he identified him by appellant's hair; (2) the witness said he could not determine the caliber of the gun, and later he said it was a 9-millimeter "German luger"; and (3) that although appellant "was wearing a white shirt," the witness said he did not notice the shirt. Appellant also argues, with respect to alleged unreliability of the victim's testimony, that no gun or wallet or money was on appellant or in the automobile when appellant was arrested. Mr.

Wheeler positively identified appellant as the robber—he said that defendant was the person who robbed him, and that there was no doubt whatsoever in his mind that appellant was the person who robbed him at the point of a gun. ██ The asserted discrepancies as to which physical features of appellant were considered in identifying him (whether hair and eyes, or only hair) were a minor part of the identification evidence to be considered by the jury. At the trial, Mr. Wheeler was asked if he recalled the description he gave to the police; and he replied that it was the long hair and the mask. At the preliminary examination, it seems that he "indicated" that he identified appellant by his hair and eyes. In view of all the evidence it is obvious that the asserted discrepancy was of slight significance. ██ With reference to the alleged discrepancy as to Mr. Wheeler's ability to determine the caliber of the gun, it is to be noted that one of his statements was to the effect that he could not determine the caliber of the gun at the time of the robbery when the gun was pointed toward him; and that his other statement was to the effect that it was still true that he could not determine (at the time of the robbery) the caliber of the gun, but he already knew that "9 millimeter" was the only caliber of "a German luger." It thus appears that he was stating that the gun was "a German luger" and he knew (without determining it at the time of the robbery) that the caliber of such a gun was "9 millimeter." There was no discrepancy in his testimony with reference to his ability to determine the caliber of the gun. ██ The failure of Mr. Wheeler to observe the white shirt, which appellant now says he was wearing, does not indicate that Mr. Wheeler's testimony was not reliable. The fact that no gun or wallet was on appellant or in the automobile at the time of the arrest is of no significance in the matter of identification of appellant. It is to be remembered that appellant told the police officer that he threw the gun and wallet out of the automobile. The appellant confessed orally and in writing that he committed the robbery. The evidence of guilt was strong and was amply sufficient to support the verdict and judgment.

██ Appellant contends further that the court erred in receiving in evidence a pistol that was not used in the alleged robbery. The pistol which was used in the robbery was not available. According to statements of appellant, he threw that pistol into a parkway at the side of a street in Santa

Monica. According to testimony of a police officer, the appellant directed police officers to two different places where appellant asserted that he had thrown the pistol. Searches were made at those places but the pistol was not found. It is obvious that the pistol which was received in evidence was offered and received in evidence for the purpose of illustrating and clarifying the testimony relative to the kind and appearance of the pistol which was used. Before the pistol was received in evidence Mr. Wheeler testified that it resembled the gun that was used in the robbery and that it was of the same appearance as the gun he saw in appellant's hand. Also, the judge said when the pistol was marked as an exhibit for identification that it was so marked with the understanding that it was not the gun used in the alleged robbery. ■■ When an object connected with the commission of a crime cannot be produced at the trial, the "character and appearance of such an object may be proved by the testimony of witnesses and, for the purpose of illustrating and making more clear the testimony, there may be introduced in evidence . . . an object shown to be similar to the object involved in the offense. . . . ■ When guns were used in the commission of the offense charged, testimony that certain guns produced at the trial were similar to those used in the . . . crime is admissible and such guns themselves may be received in evidence . . . to illustrate and show to the jury the kind and appearance of the weapons used. . . ." (Fricke on California Criminal Evidence [4th ed.], pp. 149 and 150; see also *People* v. *Pianezzi*, 42 Cal.App.2d 265, 269 [108 P.2d 732].) ■ In the present case the court did not err in receiving the pistol in evidence.

■ Appellant's contention that he was not properly represented by his counsel is wholly without merit. One of his criticisms of his counsel is to the effect that when a gun (which was not used in the robbery) was offered in evidence his counsel approved the offer without asking appellant if he "minded" or objected. As above shown, the pistol was admissible in evidence for the purpose of illustrating and clarifying the testimony relative to the pistol which was used. It was proper of course for counsel not to object to evidence which was admissible. ■ Another criticism which appellant makes of his counsel is that when appellant tried to ask his counsel questions, his counsel told him to be quiet. Even if it be assumed that his counsel so admonished him, it does not appear that such advice was not for the best interests of appel-

lant. The record shows that appellant's counsel represented him very ably.

Appellant asserts further that the court erred in failing to have a handwriting expert examine a diagram which purportedly was drawn by appellant. There was no reason to require such an examination. Officer Reid testified that he saw the appellant draw the diagram, and that appellant used the diagram to explain to the officer what happened on the street. The appellant also testified that he drew the diagram. It does appear, however, that later in his testimony, when the judge asked him if he prepared the diagram, he said, "Yes, I guess so." Later he also said that the writing thereon did not look like his handwriting. There is no merit to this contention.

Another contention of appellant is that an officer, while testifying, improperly referred to appellant's probation. While Officer Reid was testifying he related a conversation which he had with appellant, on the evening of the robbery, after appellant had been taken to the police station. As above shown, the officer had testified that appellant said that he did not know anything about the robbery, that he had been riding with the boys and he had been asleep on the rear seat, and he had no idea what they had done or where they had been. As a part of that conversation, the officer also stated that appellant said that at one time the other boys had asked him if he wanted "to go on a stickup with them," and he had replied that he did not want to go and he was already on probation "for that same thing." As above shown, the judge admonished the jury to disregard the statement concerning probation. It is also to be noted that in one of appellant's written statements (statement of October 12), which was read to the jury, he said that he "had just did [*sic*] 23 months for strong arm." The judge also admonished the jury to disregard that statement; and that regardless of what defendant had written he had not been convicted of a felony. The officer should not have related the part of the conversation regarding probation. It does not appear, however, that the statement was prejudicial. The evidence of appellant's guilt was very strong, and the court instructed the jury to disregard that statement. The court also instructed the jury to disregard the part of appellant's written statement concerning time spent for "strong arm." It is presumed that the jury obeyed the instructions and disregarded those statements.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.