[Crim. No. 3356.   Third Dist.   Mar. 26, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LESLIE ED-
WARD STINSON et al., Defendants and Appellants.

John Bullington and Elmer Jennings, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendants Stinson and DeMello were separately charged with second degree burglary (Pen. Code, § 459) in that they entered the Crystal Motel at Red Bluff with the intent to commit theft. Their cases were consolidated for trial, which was held before a jury. Both were convicted and both appeal. DeMello also appeals from an order denying new trial. The order is not appealable but may be reviewed

upon the appeal from the judgment. (Pen. Code, § 1237.) Each defendant claims a single, separate ground for reversal of judgment.

Defendants met at a bar in Sacramento on the night of February 5, 1962. They drank. They left the bar, entered Stinson's automobile and drove in the direction of Redding, ostensibly to look for work. Stinson drove as far as Marysville, then, because Stinson had been drinking, DeMello took the wheel. At 1:45 a.m. the car was observed by the Red Bluff police as it traveled through a residential area of that city. The police followed the car and stopped it. DeMello was driving. He had an expired operator's license. Asking and receiving permission to search the vehicle, the police found a television set and radio on the floor of the rear compartment, both covered with a bedspread. Also in the car were numerous tools. Stinson was a sheet metal worker by occupation, DeMello a heavy equipment operator.

Earl Stearns was manager of the Crystal Motel at Red Bluff. At 7 o'clock on the morning of February 6 he discovered that the door of Room 119 of the motel was unlocked. The room had not been rented since February 4. Missing were a television set, radio, and one of two twin bedspreads. These articles were later identified as those in defendants' possession. The bedspread in the car, indeed, was the mate of that in the motel room. There was no sign that physical force or tools had been used to gain entry to Room 119.

At their trial both defendants testified that they had already been in Redding and were on their way back from that city when arrested; that DeMello was driving while Stinson slept; that while they were in Redding DeMello bought the television set, radio and bedspread from a person they encountered; that they then drove south to Red Bluff. DeMello testified that the seller was an "Indian fellow" whom they had met outside a Redding bar. He produced a paper which he said was a receipt signed by the seller.

APPEAL OF STINSON

At the time the car was stopped by the Red Bluff police, Stinson said that the television set was his. Later, while in custody, both Stinson and DeMello gave statements to the officers, each out of the other's presence. In one statement Stinson told Police Lieutenant Schoelen that he was asleep when he and DeMello arrived in Red Bluff and didn't know how the property got into the automobile. In another statement (admitted only against Stinson and not against DeMello) he

told Lieutenant Schoelen and Special Agent Lazier that he and DeMello had parked outside the Crystal Motel that night; that DeMello had gone behind the motel cabins and emerged, carrying some articles under a blanket and placing them in the rear of the car. Special Agent Lazier testified that Stinson had told him that he and DeMello were on their way to Redding in order to burglarize a supermarket and steal the safe; that they had tools with them to break open the safe. Lazier testified that these tools were in the room as Stinson was making the statement. Over defense objection the tools were admitted in evidence. Counsel for Stinson claims prejudicial error, for there was no evidence of forced entry into the motel room by means of tools or other instruments. The People support admissibility on the theory that the tools were referred to in the conversation between Stinson and Lazier and explain and corroborate the latter's testimony.

Assuming, without deciding, that the tools should not have been admitted in evidence, the error, if any, does not require reversal. Defendant makes no claim that the guilty verdict lacked evidentiary support. Our own examination of the record discloses a tight structure of competent circumstantial evidence which amply warranted the jury in concluding that Stinson had participated in the crime. Notwithstanding the asserted error, no miscarriage of justice occurred. (Cal. Const. art. VI, § 4½.)

### Appeal of DeMello

■ The information charged DeMello with a prior burglary conviction, which he admitted. Under these circumstances the law prohibited any allusion to the prior conviction during the course of trial. (Pen. Code, § 1025.)

Lieutenant Harold Schoelen of the Red Bluff Police Department was on the witness stand. Counsel for DeMello was cross-examining him in order to fix the time of some of his interviews with DeMello. The following colloquy occurred: "Q. How long did this question and answer session go on? A. Oh, it may have went for two hours. Q. That would be about 11:00 or 11:30? A. Closer to 11:so [sic] because his parole officer came down and talked to him."

Defendant's counsel immediately stated that the answer was not responsive, assigned it as misconduct and requested a mistrial. The court ordered the answer stricken, directed the jury to disregard it, and reserved a ruling on the mistrial motion. When the prosecution rested, defense counsel renewed

the motion outside the jury's presence. He pointed out that if the motion were denied he would call DeMello to testify in his own behalf. The court denied the motion but stated that if defendant were convicted, the matter would be considered in the course of a motion for new trial. Trial having resumed before the jury, DeMello was then called to the stand by his own counsel. On direct examination he admitted two prior felony convictions and that he was then on parole. Cross-examination elicited the fact that these convictions were for robbery and burglary.

Following the guilty verdict counsel again moved for a mistrial. At the appropriate time he moved for a new trial. Both motions were premised on the improper allusion to De-Mello's status as a parolee. Both motions were denied. The trial court expressed views indicative of the belief that the circumstantial evidence of guilt was convincing, that the error was not prejudicial and that, in its view, defendant could not possibly have been successful without taking the witness stand himself. Prejudicial misconduct of the police officer is the sole ground urged for reversal of DeMello's conviction.

As we have noted, Penal Code section 1025 prohibits allusion to prior felony convictions where these stand admitted. Nevertheless, these felony convictions may be shown as a means of impeaching the credibility of a defendant who takes the witness stand in his own defense. (*People* v. *Beal*, 108 Cal.App.2d 200, 205 [239 P.2d 84] ; *People* v. *Chapman*, 81 Cal.App.2d 857, 863 [185 P.2d 424].) A criminal defendant is privileged not to testify at all, thus putting the prosecution to its proof. (Cal. Const., art. I, § 13; Pen. Code, §§ 688, 1323, 1323.5.) Except where an earlier crime is relevant to proof of the offense on trial, section 1025 permits a defendant to exercise the privilege of not testifying with full confidence that he is thus preventing any mention of his prior criminal record. (Cf. *People* v. *Domenico,* 121 Cal.App.2d 124 [263 P.2d 122].) This combination of legal elements is a deliberate creation of the law. Its tactical value to defendants is heightened by recognition of a possible tendency on the part of some jurors to convict a defendant not on proof that he committed the offense but because he has a criminal past. Its value is diminished by realization that his failure to take the stand will weigh against him. (*People* v. *Adamson*, 27 Cal.2d 478, 488 [165 P.2d 3].) A defendant is free to balance the value of his own testimony against the possible disadvantage of jury knowledge of his criminal record.

Lieutenant Schoelen's reference to DeMello's parole officer completely destroyed the tactical choice which the law of this state, in all deliberation, had conferred on defendant DeMello. The transcript shows that before the trial commenced the district attorney and defense counsel had discussed the exclusion of all reference to prior convictions. It also demonstrates that Lieutenant Schoelen had been instructed against such disclosure. In direct examination of his own witnesses, including Lieutenant Schoelen, the district attorney had meticulously refrained from any such reference. It was on cross-examination, when he was not under the control of the district attorney, that the witness injected the nonresponsive reference to the parole officer, with its inevitable implication of a prior criminal record. The witness' rank indicates that he was an experienced police officer. It needs no cynic to suggest the possibility that the officer was deliberately injecting improper evidence into the case. We cannot ignore the possibility, however, that the reference was unintentional. Influence of the improper statement on the trial and conviction was the same, whether it was deliberate or accidental.

The People rely on *People* v. *Richardson,* 192 Cal. App.2d 166 [13 Cal.Rptr. 321], holding that a defendant waives erroneous admission of evidence of a prior conviction when he takes the stand and exposes himself to impeachment on the ground of the same conviction. The present case diverges substantially. In this case defendant's attorney promptly moved for a mistrial. A ruling was deferred. The motion was renewed at the close of the prosecution's case. It was denied, not on the merits, but with the notion that the improper remark would be considered in connection with a new trial motion. The effect of the delayed ruling on the merits was to alter the subsequent course of the trial. Denial of the mistrial motion put defense counsel to an immediate and difficult choice. The jury had knowledge of DeMello's criminal past. Should defense counsel sweep the matter under the rug by putting on no case? Or, having nothing to lose, should he put DeMello on the stand to make frank disclosure of his past and to pick up such crumbs of saving testimony as DeMello might be able to muster? Counsel chose the latter course. There was no waiver here in the sense of a free choice by defense counsel. His hand was forced.

Similar considerations demonstrate that no waiver occurred when defense counsel brought out the prior convictions in the course of his own direct examination of defendant. Dis-

closure was inevitable as soon as the district attorney took the witness on cross-examination. Defense counsel might as well glean what comfort he could by eliciting the same information on direct.

The principal question is whether the error requires reversal. Our constitutional obligation is to affirm "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 4½.) We approach this question in the light of a trial record which points emphatically to defendant's guilt. The prosecution evidence, though circumstantial, was tight and strong. If we disregard DeMello's own testimony, the prosecution evidence is met only by Stinson's wildly fantastic tale of his companion's nocturnal purchasing tryst in Redding, a tale whose credulity is challenged at all points by the witness' earlier statements to the police. Dropping DeMello's concoction on the scale causes no perceptible gravitation.

Improper evidence of prior offenses results in reversal only where the appellate court's review of the trial record reveals a closely balanced state of the evidence. (See for example, *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7]; *People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402]; *People* v. *Van Cleave,* 208 Cal. 295 [280 P. 983]; *People* v. *Bentley,* 131 Cal. App.2d 687 [281 P.2d 1]; *People* v. *Geibel,* 93 Cal.App.2d 147 [208 P.2d 743]; *People* v. *Baylor,* 48 Cal.App.2d 34 [117 P.2d 425]; *People* v. *Hudson,* 86 Cal.App. 497 [260 P. 887]; *People* v. *Coan,* 85 Cal.App. 580 [259 P. 998]; *People* v. *Litle,* 85 Cal.App. 402 [259 P. 458]; *People* v. *Johnson,* 63 Cal.App. 178 [218 P. 449]; *People* v. *Wyett,* 49 Cal.App. 289 [193 P. 153].) The same error, viewed in the light of a record which points convincingly to guilt, is consistently regarded as nonprejudicial. (*People* v. *James,* 193 Cal.App.2d 595 [14 Cal.Rptr. 491]; *People* v. *Jordan,* 188 Cal.App.2d 456 [10 Cal.Rptr. 495]; *People* v. *Crisafi,* 187 Cal.App.2d 700 [10 Cal. Rptr. 155]; *People* v. *McCoy,* 185 Cal.App.2d 98 [8 Cal.Rptr. 70]; *People* v. *Edwards,* 159 Cal.App.2d 208 [323 P.2d 484]; *People* v. *Lancey,* 141 Cal.App.2d 168 [296 P.2d 53]; *People* v. *Picaroni,* 131 Cal.App.2d 612 [281 P.2d 45]; *People* v. *Guthrie,* 103 Cal.App.2d 468 [229 P.2d 841]; *People* v. *Gordon,* 71 Cal.App.2d 606 [163 P.2d 110]; *People* v. *Hopkins,* 57 Cal.App.2d 382 [134 P.2d 299].)

In the present case the trial court promptly instructed the jury to disregard the offending information. A jury

admonition to disregard evidence of a prior crime is sometimes mentioned as a factor in reversal or affirmance. The limited value of the admonition is implicitly recognized by the tendency of the courts to give it weight when the evidence of guilt is convincing (*People* v. *Jordan, supra,* 188 Cal.App.2d 456) and to disregard it when the case is a close one (*People* v. *Bentley, supra,* 131 Cal.App.2d 687).

Even if the error had not occurred and even if De-Mello had not taken the stand, there is no reasonable probability that the jury would have brought in an acquittal verdict. Neither the error nor the court's delay in ruling on it caused a miscarriage of justice.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.