[Crim. No. 5414. First Dist., Div. Two. Mar. 23, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH RUBEN SALDIVAR, Defendant and Appellant.

Philip A. Oberg. under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General. Albert W. Harris, Jr., Assistant Attorney General. and Michael J. Kelly, Deputy Attorney General, for Plaintiff and Respondent.

TAYLOR, J.—Defendant was convicted of possession of heroin (Health & Saf. Code, § 11500). On appeal,[1] he contends that the analysis of a urine specimen obtained from him by his parole officer was erroneously admitted into evidence and that the testimony of the parole officer constituted an improper allusion to an admitted prior offense (Pen. Code, § 1025).

There is no dispute as to the sufficiency of the evidence. About 6:45 p.m. on July 2, 1965, Officers Weir and Larkin of the Salinas Police Department were on patrol duty and heard firecrackers exploding. They proceeded to investigate and as they were parking their police vehicle at 108 Carneros Street, saw three men standing next to two cars parked about ninety feet away. The weather was clear and the sun was still shining. One of the officers recognized defendant and observed him reach into his shirt pocket, remove a shiny object and place it by the left front wheel of the 1955 Mercury. Defendant then kicked

---

[1]The notice of appeal indicates that an appeal is also taken from the order denying the motion for a new trial. As the order is not appealable, the purported appeal therefrom must be dismissed (Pen. Code, § 1237).

at the general area behind the left front tire and walked over and sat down on the motorcycle parked nearby. The officers immediately retrieved a shiny cellophane packet containing seven bindles of heroin from under the Mercury's left front wheel. They arrested defendant and one of his companions. Defendant was informed of his right to remain silent and his right to an attorney. That evening at the police station, needle marks were noted on one of defendant's elbows. Defendant, on request, gave his parole officer a urine specimen. The chemical analysis of this specimen, indicating the presence of morphine, was admitted into evidence at the trial over defendant's objection.

On the day after arrest, defendant was questioned, after having been again informed of his rights. He denied any knowledge of the heroin found under the car but stated that he was a heroin user. At the trial, he admitted he had given himself an injection of heroin half an hour before the police arrived but claimed that the objects he threw between the cars were firecrackers and that a companion had thrown another object under the Mercury. This explanation was corroborated by two defense witnesses.

Defendant first argues that he lacked the freedom of mind to voluntarily respond to his own parole officer in giving the urine specimen and that the admission of the urinalysis into evidence violated his constitutional privilege against self-incrimination. Although the question is one of first impression in California, it was held in *United States* v. *Nesmith*, 121 F. Supp. 758, that there was no violation of the privilege against self-incrimination where a *police officer* requested and was freely given a urine specimen, the chemical analysis of which was subsequently admitted into evidence over defendant's objection.

It may be contended that a parolee would normally feel more reluctant to refuse the request of his own parole officer than that of an ordinary police officer. However, the United States Supreme Court recently held in *Schmerber* v. *California*, 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], that the privilege against self-incrimination is not violated even where the suspect expressed an unwillingness to submit to a blood test. In that case, after defendant's arrest for drunken driving, he was taken to a hospital to receive treatment for injuries suffered in an automobile accident. Despite his refusal, on advice of counsel, a blood sample was withdrawn by a physician at the direction of the police officer. The analysis indicat-

ing intoxication was admitted in evidence at the trial, over defendant's objections.

In *Schmerber,* the court relied on the many cases holding that the privilege against self-incrimination applies to evidence of "communications or testimony" but not to "real or physical evidence," derived from the accused. The court stated at page 765: "Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds." The California Supreme Court has recently held that voice identification, breath tests and handwriting exemplars (*People* v. *Graves,* 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114]), fall within the category of real or physical evidence (*People* v. *Ellis,* 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393]; *People* v. *Sudduth,* 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d 401]).

Defendant cites *Rochin* v. *California,* 342 U.S. 165, [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396], where a stomach pump was forcibly applied to obtain the narcotics swallowed by the defendant after the officers broke into the room. As intimated in *Schmerber* (fn. 9), the *Rochin* principle becomes applicable only if force is exerted or threats made to compel the defendant to comply with the demand for a specimen, or if some instrument is forcibly applied to his body to obtain it. The simple laboratory technique of pricking the skin for a blood sample is not considered within this category.

Defendant cites *People* v. *Stinson,* 214 Cal.App.2d 476 [29 Cal.Rptr. 695], and contends that the prosecution's use of his parole officer as a witness constituted an allusion to defendant's previously admitted prior felony conviction and was prejudicial error pursuant to Penal Code section 1025. However, in Stinson, the prosecution's witness referred to defendant's parole officer in a nonresponsive answer on cross-examination. Thus, the court held that defendant's tactical choice as to whether to take the stand was destroyed by the prosecution's error and that his subsequent admission of a prior criminal record on direct examination did not constitute

waiver. Reversal was not required, however, because of the overwhelming evidence of defendant's guilt.

In the instant case, the first reference to defendant's parole officer was in a direct answer to a question put by defendant's own counsel in examining the arresting officer.[2] This occurred long before the parole officer's testimony and was clearly invited by defendant. Thus, defendant was not deprived by the prosecution of the tactical choice as to whether or not he was to take the stand. The subsequent testimony of the parole officer simply supplied an additional implication of defendant's previously established status as a parolee.

The record discloses that in questioning the parole officer, no attempt was made to discuss defendant's prior convictions. The prosecution simply established a basis for the parole officer's presence in the police station by a brief answer that the witness was a California State Adult Parole Officer. No direct link with defendant was established until defense counsel questioned the parole officer on cross-examination. We conclude that as defendant was not deprived of any tactical choice, his subsequent admission of the prior cured any possible error (*People* v. *Lugo*, 220 Cal.App.2d 54, 60 [33 Cal. Rptr. 572]). Even if the initial questioning of the parole officer was error, it was clearly not prejudicial in view of the overwhelming evidence of defendant's guilt (*People* v. *Stinson, supra*).

The judgment is affirmed. The appeal from the order denying the motion for a new trial is dismissed.

Agee, Acting P. J., and Bray, J.,* concurred.

---

[2] "Q. Did you during the course of your questioning of the defendant ask him to produce a urine sample? A. I didn't, no. Q. Did you get one from him? A. I didn't, no. Q. Did someone else ask him to do this? A. I believe his parole officer did."

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.