Filed 9/29/15  P. v. Fourzon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C075791 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 13F3276 & 13F3278) |
| v. | |
| BARRY EDWARD FOURZON III, | |
| Defendant and Appellant. | |

Defendant Barry Edward Fourzon III threatened to brutally murder several members of his family and shot at their home before fleeing in a car, firing more shots as he left.  More than two weeks later, defendant was seen by a peace officer driving a stolen car.  When the officer began pursuit, defendant fled in the car at speeds up to 90 miles per hour in a 45-mile-per-hour zone before crashing the car into a tree and fleeing on foot.  Defendant was later arrested and charged in separate cases with several felonies and prior prison terms.  A jury found defendant guilty of various charges in the high-

1

speed chase case. By agreement, defendant pleaded no contest in the shooting case. He was sentenced to prison.

On appeal, in the case tried to a jury, defendant contends the trial court erred by allowing prosecution witness Shasta County Sheriff's Deputy Jason Thatcher to testify that, before identifying defendant as the driver of a stolen car, Thatcher had been shown a picture of defendant and told to be on the lookout because he was "armed and dangerous." We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Case No. 13F3276 (shooting case)*

On May 9, 2013, Shasta County Deputy Sheriff Steven Curtiss responded to a call of shots fired on Sara Jane Lane in Anderson. The caller reported defendant came to the home of Krystal Fourzon[1] (defendant's sister) and Patrick Lane (defendant's brother-in-law) and, after getting into an altercation, threatened to "come back and kill everybody." Defendant fired shots as he drove away.

When Deputy Curtiss arrived on the scene, he knocked on the door several times. He heard people inside, but no one answered. After Deputy Curtiss announced himself at least two times, Lane finally opened the door. Lane and the other occupants of the house looked nervously out the door. Lane told Deputy Curtiss he and his wife and children lived at the house, and defendant's wife, Cheyenne Hutton, and child were staying there as well.

Lane said he received a call shortly before the incident from defendant's mother. She was looking for defendant. Within minutes, defendant drove up in a blue convertible BMW. Hutton, Krystal, and the children fled to a back bedroom and hid. Lane stepped out onto the front porch and told defendant to leave. An argument began. Defendant

---

[1]    Because Krystal Fourzon shares the same last name as defendant, we refer to her by her first name for clarity.

2

swore at and threatened Lane.  He said he intended to go inside the house and retrieve his wife and child.  When defendant started to pull a pistol from his waistband, Lane grabbed a shotgun from near the door and fired a warning shot into the air.  Defendant retreated to his car, threatening to come back and kill everybody in the house.  He drove to the corner of the property.  He fired two or three shots toward the house.  Startled, Lane accidentally fired a round into the ground somewhere between himself and defendant.  Defendant sped off.  He fired another two or three shots toward the house as he drove away.

Deputy Curtiss interviewed Krystal.  During the interview, Krystal received a series of profane, threatening text messages from defendant as follows:

"Everyone, your fucking teeth I'm going to shatter."

"I never came around you as a threat enough to have my life taken with your gun. You won't be living here for long, and I meant what I say about whoever involves with hiding my son.  Just ask her what I said."

"You think I would ever hurt your kids?  That's the last thing I would do."

"Krystal, you're fucking going to regret -- regret it.  Your kids will always be safe, but everyone else won't."

"The truth hurts and lies will kill."

"I'm going to hurt your husband the way you hurt me, and I hope to get killed doing it."

Krystal told Deputy Curtiss that defendant carried a gun.  Hutton, who appeared to Deputy Curtiss to be "extremely scared," informed Deputy Curtiss she and her child were living at Lane's home, and she feared defendant would return to hurt or kill her and take their child. Efforts by law enforcement officers to find defendant that night were unsuccessful.

*Case No. 13F3278 (high-speed chase case)*

On May 27, 2013, Rickles Adkins IV noticed his father's 1996 gold Toyota Camry was missing. His wife, Naomi Adkins, promptly reported it stolen.

Shasta County Deputy Sheriff Jason Thatcher attended a patrol briefing at the start of his shift at 7:00 the following morning. During the briefing, officers discussed defendant at length "regarding crimes that had been occurring in the Happy Valley area." In particular, officers discussed "a recent incident in which [defendant] was implicated and an incident which would require deputies to be exercising the utmost caution if contacting [defendant]" because they were told to "consider [defendant] armed and dangerous." During the briefing, Deputy Thatcher was shown a photograph of defendant, which Deputy Thatcher took great care in studying "[g]iven that [defendant] was . . . considered armed and dangerous."

At approximately 5:45 that evening, Deputy Thatcher was on patrol on Oak Street in Happy Valley when he noticed a red Jeep approaching from the opposite direction, followed by a gold-colored Camry occupied by two people. Deputy Thatcher testified he had been alerted in the morning briefing to possible stolen vehicles he should be on the lookout for, and the Camry was consistent with the description of one of those stolen vehicles. Deputy Thatcher slowed down to "no more than 40 miles an hour" and, as he passed within "a couple of feet" of the Camry, he could clearly see the driver was defendant, who he recognized from the picture he was shown at the morning briefing. He later testified that, although he could see there was someone in the passenger seat, he could not identify that person because he was concentrating on the driver. Deputy Thatcher slowed down, immediately turned around, and began following the Camry. As he did, defendant accelerated "very rapidly," crossing the double yellow line and passing the Jeep. When Deputy Thatcher activated his lights and siren, the Jeep pulled over out of his way but defendant continued to accelerate. Deputy Thatcher gave chase, reaching speeds of "[a]bout 80 to 90 miles an hour" in a 45-mile-per-hour zone. Defendant

4

continued to accelerate while driving erratically. He eventually lost control on a sharp turn, veered off the road, and crashed head-on into a tree.

When the dust finally settled, Deputy Thatcher saw the driver's seat of the Camry was empty. He scanned the area, thinking the driver might have been ejected from the car, but saw no one. He detained a woman, later identified as Kendra Moore,[2] who was trying to escape the Camry through the passenger side window.

A nearby resident alerted Deputy Thatcher that the driver had just fled through the side yard. Deputy Thatcher passed that information on to other law enforcement personnel on the scene. An exhaustive search of the area turned up nothing. In the meantime, Deputy Thatcher took Moore's statement, then examined the Camry and confirmed it had in fact been reported stolen. Other officers searched the car and discovered items known to be used to commit burglaries, including a shaved ignition key, a crowbar, a glass cutter, a flashlight, and rubber gloves. They also found electronic equipment, including a portable speaker, an iPod touch, three cell phones, a couple of two-way radios, and two car stereo faceplates, and a handwritten letter containing defendant's signature.

*Dispositions*

A jury, on August 28, 2013, in case No. 13F3278 (involving the high-speed chase), found defendant guilty of three felonies, evading an officer with disregard for public safety (Veh. Code § 2800.2), receipt of a stolen motor vehicle (Pen. Code § 496d, subd. (a)),[3] and hit and run causing injury (Veh. Code § 20001, subd. (a)), and one misdemeanor, possession of burglary tools (Pen. Code § 466). In a bifurcated

---

[2]     Moore subsequently failed to appear at trial despite having been served with a subpoena.

[3]     Unspecified statutory references are to the Penal Code.

5

proceeding, the trial court found true two prior prison term allegations, both for evading an officer with disregard for public safety (Veh. Code § 2800.2).

By agreement, on January 13, 2014, defendant pleaded no contest in case No. 13F3276 (involving the shooting), to a single felony, making criminal threats (§ 422), in exchange for dismissal of all remaining charges with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754).[4] The dismissed charges included assault with a firearm (§ 245, subd. (a)(2)), shooting at an inhabited dwelling (§ 246), two other counts of criminal threats (§ 422), and possession of a firearm by a felon (Pen. Code § 29800, subd. (a)), all felonies. Also dismissed was an allegation defendant personally used a firearm in the commission of assault with a deadly weapon (§ 12022.5, subd. (a)), and served two prior prison terms (§ 667.5, subd. (b)). A misdemeanor case, case No. 13M3275, was dismissed.

On January 28, 2014, the trial court imposed a combined sentence of five years four months in state prison as follows: In case No. 13F3276 (involving the shooting), the court sentenced defendant to one year four months in state prison for felony criminal threats (§ 422); in case No. 13F3278 (involving the high-speed chase), the court sentenced defendant to state prison for three consecutive eight-month terms in state prison for evading an officer with disregard for public safety (Veh. Code § 2800.2), receipt of a stolen motor vehicle (§ 496d, subd. (a)), and hit and run causing injury (Veh. Code § 20001, subd. (a)), plus two one-year terms for each prior prison term (§ 667.5, subd. (b)), and a concurrent 30-day term for count 4. The court imposed fees, fines, and assessments, and awarded defendant 488 days of presentence custody credit (244 days of actual custody credit, plus 244 days of conduct credit).

Defendant filed timely notices of appeal.

---

[4]     The parties stipulated that the factual basis for defendant's plea was to be found in the transcript of the preliminary hearing conducted on June 13, 2013.

DISCUSSION

Defendant's sole contention on appeal challenges the trial court's admission of Deputy Thatcher's testimony regarding the information he obtained during the May 28, 2013, briefing that defendant was armed and dangerous.  Despite the limiting instruction given by the court, counsel claims the evidence was highly inflammatory and, as evidence of irrelevant, unrelated criminal conduct, should have been excluded under Evidence Code section 352.  We disagree.

*Background*

At trial, the prosecution sought to introduce evidence Deputy Thatcher recognized defendant as the driver of the stolen Camry after he was shown a photograph of defendant at the May 28, 2013, briefing and instructed to be on the lookout for defendant and to consider him armed and dangerous.  Defense counsel objected on the ground Deputy Thatcher's testimony was hearsay and any probative value was outweighed by its prejudicial effect.

Prior to Deputy Thatcher testifying outside the presence of the jury, the court conducted a hearing pursuant to Evidence Code section 402.  After a brief examination of Deputy Thatcher by both parties, defense counsel argued, "[T]he important thing is that the reason they were looking for [defendant] was not because of this stolen vehicle and I think that needs to be made clear to the jury one way or the other.  They're given all this information about a different crime, so -- not that he's looking for [defendant] in a stolen gold Camry.  [¶]  So, I think that it's important that we be able to distinguish and what I don't want to do is to start to have to cross[-]examine on that and the People say, 'Now you've opened the door to certain things.' "

The court admonished Deputy Thatcher as follows:  "Deputy Thatcher, . . . I'm not going to permit you to testify about any information that connected [defendant] to a stolen gold Camry; that, in my judgment, is more prejudicial than it is probative.  So, I don't want you -- I don't want you spilling those beans up here in front of the jury.  As I

7

understood your testimony, it wasn't so much the car but [defendant] that really caught your attention and then connecting him to the stolen Camry. So, I know there is a certain simultaneous order to this whole thing but, in my judgment, that is substantially more prejudicial than it is probative in light of the other information that I'm probably going to let you testify about that you heard concerning [defendant] that would make the point as to why you were so observant of him as he passed you. [¶] Now, I'm not -- I'm not going to foreclose you telling the jury, if it's true, that you were aware that there was a report of a stolen gold Camry; that's -- if you misunderstood me, let me clear that up. That is just more information that would have made you alert to a stolen gold Camry and [defendant]. But the idea that you're going to connect him to that car beforehand, I'm not going to permit that. Clear?" Deputy Thatcher responded, "Clear."

Defense counsel argued: "I don't know if the court was going to let in 'armed and dangerous' but I think that a serious matter not related to the stolen vehicle should be the limit of it. Because putting a gun in somebody's hand is going to be much more prejudicial than probative and we don't know that's the truth; that case hasn't been litigated and it's pending. So, it's -- I would ask it be limited to he was a suspect in a serious matter that had been the subject of a briefing that morning and for the last few days or whatever."

The prosecution asserted the fact defendant "was armed and considered potentially dangerous, with a limiting instruction, is relevant because, as Deputy Thatcher testified, when someone is considered armed and dangerous they take special note because the safety of themselves, their lives and the lives of the public are at higher risk. And I think that that, as Deputy Thatcher testified, would make him more cautious in been [*sic*] observing these photos, studying them, making sure he can identify someone based on these photos . . . ."

In the absence of Kendra Moore's testimony, the court noted Deputy Thatcher's testimony was the only evidence on the issue of identity, making its probative value "that

much more significant." The court determined the probative value was not substantially outweighed by any potential prejudice, and concluded Deputy Thatcher would be permitted to testify regarding the briefing, that defendant "was allegedly reported to have been armed and dangerous," that Deputy Thatcher was shown a booking photograph of defendant which Deputy Thatcher took "special note of," considering the safety concerns presented, and that Deputy Thatcher recognized defendant driving a gold vehicle. The court further concluded the jury would be given a limiting instruction not to consider that particular portion of Deputy Thatcher's testimony for the truth of the matter asserted.

When the jury reconvened, the court instructed the jury as follows: "Ladies and gentlemen, Deputy Thatcher is going to testify about certain information he had been given about [defendant] prior to the incidents involved in this case. This information is being admitted only on the limited issue of identity of the person Deputy Thatcher claims he saw driving the gold Camry. The information given to Deputy Thatcher at a patrol briefing and beforehand is hearsay and you may not consider this information for the truth of the matter asserted. You may consider this information only for the limited purpose of determining the accuracy of the identification of [defendant] as the driver of the gold Camry. So, keep that in mind. [¶] Remember that information, statements made out of court that are not cross[-]examined, not subject to the sort of stuff we go through here in court, you just can't rely on it. So, I don't want you to consider these hearsay statements for any purpose except that one limited purpose of identification."

Deputy Thatcher testified, in part, as follows:

"[THE PROSECUTION]: And on this particular day, May 28th, during your morning briefing, did you discuss anyone particularly?

"[DEPUTY THATCHER]: One of the subjects that we -- that we discussed at length was [defendant], regarding crimes that had been occurring in the Happy Valley area.

9

"[THE PROSECUTION]: And were you advised of a serious incident involving [defendant] that had occurred within the last few days?

"[DEPUTY THATCHER]: Yes. We discussed a recent incident in which [defendant] was implicated and an incident which would require deputies to be exercising the utmost caution if contacting [defendant].

"[THE PROSECUTION]: And were you alerted that he may be armed and dangerous?

"[DEPUTY THATCHER]: We were told to consider him armed and dangerous."

On cross-examination, Deputy Thatcher testified, in part, as follows:

"[DEFENSE COUNSEL]: Okay. Now, I want to go back -- You said there was a briefing on the morning of the 28th before you started your shift?

"[DEPUTY THATCHER]: Yes, sir.

"[DEFENSE COUNSEL]: And in that briefing -- That briefing wasn't about a stolen gold Camry, was it?

"[DEPUTY THATCHER]: Not specifically.

"[DEFENSE COUNSEL]: Okay. And the briefing about [defendant] was not related to stolen vehicles, was it?

"[DEPUTY THATCHER]: I'm sorry?

"[DEFENSE COUNSEL]: The briefing -- You said there was . . . a briefing about [defendant] and to be on the look-out for him and he may be armed and dangerous, that -- that's -- he was suspected in another crime, correct?

"[DEPUTY THATCHER]: Correct.

"[DEFENSE COUNSEL]: And that wasn't a stolen vehicle crime, was it?

"[DEPUTY THATCHER]: We were told that he was associated with --

"[DEFENSE COUNSEL]: I'm asking you a question. Was the briefing about the crime he was a suspect in a stolen vehicle crime?

"[DEPUTY THATCHER]: No."

10

*Applicable Law*

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

" '[How] much "probative value" proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity).' [Citation.]" (*People v. Thompson* (1980) 27 Cal.3d 303, 318, fn. 20, quoting *People v. Delgado* (1973) 32 Cal.App.3d 242, 249 (overruled on another point in *People v. Rist* (1976) 16 Cal.3d 211, 221).)

"This court has noted that ' "[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' " [Citations.]' [Citation.]" (*People v. Holford* (2012) 203 Cal.App.4th 155, 167 (*Holford*), italics omitted.)

The trial court's discretion under Evidence Code section 352 is broad and its exercise of discretion will not be disturbed except if it resulted in a " 'manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; accord, *People v. Hernandez* (2011) 200 Cal.App.4th 953, 966 [trial court's Evidence Code section ruling not disturbed on appeal absent " ' " 'a showing that

11

the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice' " ' [Citation.]"].)

*Analysis*

We conclude the trial court did not abuse its discretion in admitting Deputy Thatcher's testimony to the effect defendant was armed and dangerous.

In light of Kendra Moore's failure to appear at trial, Deputy Thatcher was the only witness who could identify defendant as the driver of the gold Camry. The fact he was told to consider defendant armed and dangerous was relevant for purposes of explaining why he paid such particular attention to defendant's photograph and how that enabled him to identify defendant as the driver of the Camry.

Defendant acknowledges the evidence was only admitted for the limited purpose of showing "[Deputy] Thatcher's watchful state of mind," but argues it was nonetheless inflammatory and prejudicial. First, he cites Evidence Code section 800, *People v. Perry* (1976) 60 Cal.App.3d 608, and *People v. Mixon* (1982) 129 Cal.App.3d 118, claiming the challenged testimony was improper opinion testimony because it informed the jury that he was the subject of police inquiry. Second, he argues, because the sole purpose for admitting the challenged testimony was to bolster Deputy Thatcher's credibility, its probative value was negligible. While Deputy Thatcher's identification of him was necessary to the prosecution's case, counsel says the details of "uncharged, serious crimes" were not necessary, not even to show Deputy Thatcher paid close attention at the briefing, something law enforcement officers presumably always do. Therefore, defendant argues, the introduction of this evidence served no function other than to prejudice him. We disagree.

To the extent defendant argues Deputy Thatcher's testimony constituted inadmissible lay opinion testimony, that claim is forfeited for failure to object on that specific ground at trial. (*People v. Mattson* (1990) 50 Cal.3d 826, 853-854, quoting Evid.

12

Code § 353, subd. (a) [objection to evidence must be "timely made and so stated as to make clear the specific ground of the objection or motion"].)

In any event, Deputy Thatcher did not testify to the details of uncharged crimes or that defendant had been linked to the stolen Camry. Rather, he testified he was advised defendant was implicated in a "recent incident" and should be considered armed and dangerous and, given his "great safety concern for deputies and the public," he took "great care in studying [defendant's] photograph." That testimony had significant probative value, because it served to explain how Deputy Thatcher, the only available witness, was able to identify defendant as the driver of the Camry. The testimony had a significant effect on the issue of identity, consequently the fact it may have evoked some level of emotional response from the jury did not render it unduly prejudicial for purposes of Evidence Code section 352. (*People v. Holford, supra*, 203 Cal.App.4th at p. 167.)

Moreover, the challenged portion of Deputy Thatcher's testimony constituted a very small portion of the trial, with only a handful of questions and responses related to the fact defendant was considered armed and dangerous and the relevance of that information to Deputy Thatcher. Further, any possibility of confusing or misleading the jury was avoided by the court's instruction admonishing the jury to consider the challenged testimony "only for the limited purpose of determining the accuracy of the identification of [defendant] as the driver of the gold Camry" and not for the truth of the matter asserted. Defense counsel's cross-examination clarification of the "recent incident" in which defendant was implicated as something other than auto theft also diminished any potentially harmful impact of the challenged testimony.

Defendant claims the limiting instruction failed to cure the prejudicial effect of Deputy Thatcher's testimony, which invited the jury to conclude defendant was "the sort of person who was a threat to law enforcement and the public, and therefore he must have fled from [Deputy] Thatcher in a stolen car." We disagree for several reasons. First, the limiting instruction was given *prior to* Deputy Thatcher's testimony. It cautioned the

13

jury to consider the testimony only to determine whether Deputy Thatcher's identification of defendant was accurate. Next, unlike the cases cited by defendant where reversible error was found (e.g., the jury was told the defendant was an "ex-convict" (*People v. Ozuna* (1963) 213 Cal.App.2d 338, 342), the defendant "did time in San Quentin" (*People v. Figuieredo* (1955) 130 Cal.App.2d 498, 505-506), and the defendant was a parolee (*People v. Stinson* (1963) 214 Cal.App.2d 476, 480)), the jury here was told only that defendant was implicated in a "recent incident" (but not a crime involving a stolen vehicle) and should be considered armed and dangerous. Given that the trial court admonished the jury to consider that information not for the truth of the matter asserted and only for the limited purpose of determining the accuracy of Deputy Thatcher's identification of defendant as the driver of the Camry, and the fact we presume the jurors understood and followed the court's instruction (*People v.* Holt (1997) 15 Cal.4th 619, 662), the limiting instruction was sufficient to mitigate any potential prejudice on the jury.

The trial court did not abuse its discretion in admitting Deputy Thatcher's testimony. In the absence of prejudicial error, defendant's claim of denial of his right to due process fails.

DISPOSITION

The judgment is affirmed.

                                                                      NICHOLSON_____, Acting P. J.


We concur:


_____DUARTE_____, J.


_____HOCH_____, J.

14