[No. D058407. Fourth Dist., Div. One. May 7, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBIN ANDREW DUNN, Defendant and Appellant.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**IRION, J.**—Robin Andrew Dunn appeals the judgment sentencing him to prison after a jury found him guilty of committing sex crimes against an eight-year-old relative and infecting her with syphilis. Dunn contends the judgment must be reversed because (1) the trial court abused its discretion in denying his motion for mistrial, which was based upon the failure of his retained expert witness to appear at trial and (2) trial counsel provided ineffective assistance by failing to subpoena the expert witness to appear at trial. We reject these contentions and affirm the judgment.

I

FACTUAL BACKGROUND

A. *Dunn's Molestation of Minor*

In the summer of 2007, Dunn and a relative who was eight years old at the time (hereafter Minor) lived in an apartment with Dunn's girlfriend, Ava Loftis. Several relatives of Loftis also lived in the apartment.

One night, while Loftis was at work, Minor watched a movie with Dunn in the master bedroom and then went to sleep on the floor. Dunn picked Minor up from the floor, laid her supine on the bed, removed her pajama bottoms and underwear, and lowered his own underwear. Then, in the words of Minor, Dunn got "on top of [her]," "humped" her, and touched his "private part" to her "private part" in a way that hurt her.[1] As Minor tried to push Dunn away, she told him "to get off [her] and [she] wasn't his girlfriend," but Dunn told her to be quiet.

Dunn eventually got off Minor, who went back to the floor and lay down. Approximately five minutes later, Dunn lifted Minor back onto the bed, and again touched his "private part" to her "private part."

B. *Minor's Reports of the Molestation*

The following morning, Loftis's son told Minor he heard her say, "Stop. You're nasty. I'm not Ava," and asked her why she said that.[2] Minor told him what Dunn had done to her in the bedroom.

When Loftis returned home from work, Minor also told her that Dunn "was feeling on her and humping on her." A few days later, Loftis and Minor telephoned and reported the molestation to Minor's mother (hereafter Mother), who immediately went to Loftis's apartment to pick up Minor.

Mother took Minor to a hospital. While there, Minor met with a social worker and informed her that she (Minor) was in the hospital because Dunn had "humped" her and touched her with his penis "inside [her] pants."

Minor also spoke to a police officer at the hospital. She told the officer she was at the hospital because "she had humped [Dunn]," and explained that " 'humped' meant that two people lie down, one on top of the other, and they don't wear any clothes and then they go up and down." Minor also told the officer that Dunn had taught her what "humped" means.

Minor later repeated this account of the molestation to a forensic interviewer. During the videotaped interview, which was played for the jury,

---

[1] At trial, when Minor was given diagrams depicting frontal views of a man and a woman, she circled the genital areas to indicate what she meant by "private parts."

[2] One of Loftis's nephews also heard Minor say, "I'm not Ava"; and another nephew heard her say, "Stop. Get off me. You're nasty. I'm not Ava."

Minor used anatomically correct dolls to illustrate how Dunn had "humped" her. Minor pointed to the "private" on the male doll and stated Dunn put that "[i]nside" her "private."

## C.  *Minor's Sexual Assault Examination*

After Mother and Minor left the hospital, Mother immediately took Minor to be examined by Marilyn Kaufhold, a pediatrician specializing in child abuse. Kaufhold examined Minor's genitalia and anus, but found nothing of significance that was abnormal.

Kaufhold testified that a normal physical examination was consistent with Minor's report that Dunn had "humped" her and it hurt, provided Dunn had rubbed his penis against Minor's vulva (or external genitalia) but had not inserted it into her vagina. Kaufhold explained that young children generally do not know the anatomy of their genitals or understand how the various parts "fit together." Thus, a girl might say something went "inside" her if it went "inside the labia and in the vestibule without going into the anatomic vagina." If Dunn's penis had actually penetrated Minor's vagina, however, Kaufhold would expect to have found "serious tears" requiring surgical repair.

## D.  *Minor's Diagnosis with Syphilis*

Approximately six weeks after Mother took Minor to Kaufhold, Mother took Minor to her regular pediatrician, Genevieve Minka, for a scheduled appointment. Mother informed Minka that Minor had a discharge in her underwear, and Minor's vulva "had a sore spot" and "looked swollen like somebody was messing with her." Minka observed a circular ulcer with a raised edge on Minor's right labium majus. The lesion extended from the outer to the inner aspect of the right labium majus; to visualize it fully, Minka had to separate Minor's labia majora. Minka also detected redness and enlarged lymph nodes in Minor's groin. Based on these physical findings and the history of sexual abuse, Minka suspected Minor might have a sexually transmitted disease and ordered her blood tested. The test came back positive for syphilis.

Before this diagnosis of Minor with syphilis, neither Minor nor Mother had been diagnosed with or treated for that disease. Subsequently, Mother's blood tested negative for syphilis, but Dunn's tested positive.

Kenneth Katz, a public health practitioner who specializes in sexually transmitted diseases, testified at trial about the transmission of syphilis. Katz explained that syphilis is a sexually transmitted disease caused by a bacterium that infects the body at the site of exposure and then spreads throughout the whole body. According to Katz, the disease spreads from one person to another when the skin or mucous membrane of an infected person comes into contact with the skin or mucous membrane of another person.

Katz further explained that the initial stage of syphilis produces a characteristic ulcer called a "chancre," which appears between 10 and 90 days after initial exposure and expands concentrically outward from the point of exposure. According to Katz, a chancre is highly infectious and, in the vast majority of cases, a person contracts syphilis when the person's skin or mucous membrane comes into contact with a chancre of an infected person.

The prosecutor presented Katz with a hypothetical based on the facts of this case and asked whether he had an opinion as to how Minor contracted syphilis. Katz testified it was "likely" she got it from Dunn.

## II

## PROCEDURAL BACKGROUND

The People charged Dunn with having sexual intercourse with Minor, a child 10 years old or younger (count 1; Pen. Code,[3] § 288.7, subd. (a)) and committing a lewd act on Minor, a child younger than 14 years (count 2; § 288, subd. (a)). With respect to count 2, the People alleged Dunn had engaged in substantial sexual conduct with Minor (§ 1203.066, subd. (a)(8)) and personally inflicted great bodily injury on her (§ 12022.8). The People also alleged Dunn had four probation-denial prior felony convictions (§ 1203, subd. (e)(4)) and had served three prior prison terms (§ 667.5, subd. (b)).

The case proceeded to trial before a jury. As explained in more detail later (see pt. III.A.1., *post*), at the end of the People's case Dunn moved for a mistrial on the ground his retained expert witness unexpectedly became unavailable to testify. The trial court denied the motion.

The jury found Dunn guilty on both counts. With respect to the conviction on count 2 (lewd act on minor), the jury found true the allegations that Dunn had engaged in substantial sexual conduct with Minor and had caused her great bodily injury.

---

[3] Undesignated section references are to the Penal Code.

In a bifurcated proceeding, the trial court found true the allegations concerning Dunn's prior felony convictions and prison terms.

The court sentenced Dunn to prison for 25 years to life for the conviction on count 1. (§ 288.7, subd. (a).) It imposed but stayed execution of prison sentences for the conviction on count 2 and the attached great bodily injury enhancement. (§ 654.) The court also imposed a consecutive prison term of three years for Dunn's service of three prior prison terms. (§ 667.5, subd. (b).)

## III

## DISCUSSION

Dunn raises two challenges to the judgment, both related to the unanticipated unavailability of his expert witness to testify at trial: (1) the trial court prejudicially erred in denying his motion for mistrial and (2) trial counsel's failure to subpoena the expert witness constituted ineffective assistance of counsel. As we shall explain, neither challenge has merit.

### A. The Trial Court Did Not Abuse Its Discretion in Denying the Motion for Mistrial

Dunn argues the trial court abused its discretion in denying his motion for mistrial, which, as noted, was based on the unexpected unavailability of his expert witness to testify at trial. According to Dunn, this deprived him of the opportunity to present evidence on a "critical element in the case, in violation of [his] fair trial and due process rights under the United States and California Constitutions." After setting forth additional pertinent facts and the applicable standard of review, we shall explain why we reject Dunn's argument.

#### 1. Additional Facts

Near the end of the People's case, Dunn's counsel informed the court he could not reach his retained expert witness, Lynne Ticson, and expressed concern she might not be able to testify because her boss was demanding three days' notice and a subpoena. Counsel suggested he might request a mistrial based on Ticson's unexpected unavailability to testify.

The trial court inquired into Ticson's specialty and the general nature of her expected testimony. Dunn's trial counsel stated that Ticson is a pediatrician who has performed sexual assault examinations for law enforcement. As to her expected testimony, counsel explained: "Basically, Your Honor, I think

the general subject of her testimony would be essentially the flip side of Dr. Kaufhold. Whereas Dr. Kaufhold looked at the evidence and believed that not only was it consistent with the history given by the child, but she made it sound as if it was very likely, given the medical evidence. Dr. Ticson was the opposite. She felt that it was unlikely, highly unlikely that there was intercourse. And 'intercourse' meaning penetration of the area beyond the labia majora into what would be called the mucosa, into that area which I think would correspond to what the law is."

The court then asked Dunn's counsel whether he had discussed with Ticson the People's request to modify the jury instruction defining sexual intercourse (CALCRIM No. 1127)[4] to add: " 'Sexual penetration' of the genitalia refers to the penetration of the labia majora, not the vagina." Counsel answered, "I haven't gotten into that yet because we hadn't any definitive ruling on that."

Counsel further explained that he had discussed with Ticson his view that penetration refers to "the interior of the labia majora. I don't think it's just the labia majora." According to counsel, the molestation described by Minor— i.e., that Dunn was "on top of her, on more than one occasion, rocking back and forth inside of her to the point that it hurt"—had to involve more than slight penetration of Minor's vulva; it involved "more what seems like intercourse." Counsel therefore expected Ticson to contradict Kaufhold's testimony that the absence of any significant abnormal findings on physical examination was consistent with the type of molestation claimed by Minor.

The court also discussed with Dunn's counsel the possibility of retaining another expert witness. Counsel stated he had tried but could not find a substitute. The court then directed counsel to contact Ticson to secure her presence at trial, but he was unable to do so.

The next day, Dunn's counsel informed the court that Ticson was unavailable to testify at trial due to scheduling conflicts, and formally requested a mistrial. When the court invited counsel to make a record, counsel reiterated that "the whole penetration issue . . . is essentially what Dr. Ticson's testimony would go to." According to counsel: "[I]t would be her opinion, from her training and experience, that the lack of physical findings would not be consistent with the child's testimony and the facts of the case . . . ." "[I]t would be highly unlikely that things could have happened the way it was said that they happened and there not be any physical findings anywhere on her genitalia, be it the . . . inner aspects of the labia, . . . the hymen, and all the various other parts that are involved."

---

[4] CALCRIM No. 1127 states in pertinent part: "*Sexual intercourse* means any penetration, no matter how slight, of the vagina or genitalia by the penis."

The court also asked Dunn's trial counsel whether he had intended to ask Ticson any questions about Minor's syphilis. Counsel responded that he was going to ask Ticson to review Minka's notes, which in counsel's view indicated "the chancre was on the outside of the labia. But other than that, [he] was not going to get into anything about contraction of syphilis in general or how it related to this particular case."

The court concluded there would be no miscarriage of justice were Dunn convicted in 'the absence of Ticson's testimony because Dunn was not prevented from arguing that based on the People's evidence there was a reasonable doubt of his guilt. The court accordingly denied the motion for mistrial.

### 2. Standard of Review

■ A motion for mistrial should be granted " 'only when a party's chances of receiving a fair trial have been irreparably damaged.' " (*People v. Clark* (2011) 52 Cal.4th 856, 990 [131 Cal.Rptr.3d 225, 261 P.3d 243] (*Clark*).) Whether a particular incident is so prejudicial that it warrants a mistrial "requires a nuanced, fact-based analysis," which is best performed by the trial court. (*People v. Chatman* (2006) 38 Cal.4th 344, 370 [42 Cal.Rptr.3d 621, 133 P.3d 534].) We review a trial court's order denying a motion for mistrial under the deferential abuse of discretion standard. (*Clark*, at p. 990.) "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113 [40 Cal.Rptr.3d 118, 129 P.3d 321].)

### 3. Legal Analysis

■ Although the parties agree the ultimate inquiry on a motion for mistrial is, as noted above, whether some event occurred that irreparably damaged the moving party's chance of receiving a fair trial, the parties have not cited, and we have not found, any California cases discussing whether a mistrial should be granted when an expert witness retained by the moving party (or any other witness expected to testify on behalf of the moving party) unexpectedly becomes unavailable or otherwise does not appear at trial.[5] We

---

[5] The lack of such case law is not surprising because in a typical motion for mistrial, a criminal defendant contends *an adverse or third party* (e.g., the trial judge, the prosecutor, a prosecution witness or a juror) said or did something that prevented the defendant from receiving a fair trial. (See, e.g., *People v. Thomas* (2012) 53 Cal.4th 771, 818 [137 Cal.Rptr.3d 533, 269 P.3d 1109] [jurors discussed death of witness's wife during deliberations]; *People v. Dement* (2011) 53 Cal.4th 1, 49 [133 Cal.Rptr.3d 496, 264 P.3d 292] [alleged prosecutorial

have, however, found cases discussing the analogous situation of a motion for new trial based on the absence of testimony from a witness who was expected to testify at trial. Like a motion for mistrial, a motion for new trial should be granted when necessary "to insure an accused a fair trial." (*People v. Davis* (1973) 31 Cal.App.3d 106, 110 [106 Cal.Rptr. 897] (*Davis*).)

█ In determining whether to grant a motion for new trial based on the absence of a witness who was expected to testify at trial, relevant factors include (1) the defendant's diligence in securing the attendance of the witness (*People v. Beard* (1956) 46 Cal.2d 278, 282 [294 P.2d 29] (*Beard*); *People v. DePrima* (1959) 172 Cal.App.2d 109, 116 [341 P.2d 840]; *People v. Goodale* (1939) 33 Cal.App.2d 80, 87 [91 P.2d 163] (*Goodale*)); (2) the defendant's use of available alternative means to obtain the desired evidence (*Beard*, at p. 282; *People v. Glover* (1969) 270 Cal.App.2d 255, 260 [75 Cal.Rptr. 629] (*Glover*)); (3) the defendant's fault for the witness's nonappearance (*People v. Randle* (1982) 130 Cal.App.3d 286, 296 [181 Cal.Rptr. 745] (*Randle*); *Davis, supra*, 31 Cal.App.3d at p. 110; cf. *Lewis & Oliver, supra*, 39 Cal.4th at p. 1030 [defendant may not disrupt courtroom proceedings and then urge disruption as ground for mistral because " 'defendant is not permitted to profit from his own misconduct' "]); and (4) the nature of the testimony expected from the witness and its probable effect on the outcome of the trial (*Davis*, at pp. 109, 111; *DePrima*, at p. 116). Applying these factors, we conclude the trial court did not abuse its discretion in denying Dunn's motion for mistrial.

First, it is not clear whether Dunn exercised due diligence in securing Ticson's attendance at trial. The record indicates counsel never met Ticson in person, had difficulty communicating with her by telephone, and never obtained a firm commitment from her that she would attend the trial on a specific date even though counsel knew she was scheduled to leave on vacation near the time of trial. Further, Dunn's failure to subpoena Ticson to appear at trial would support the trial court's decision to deny the mistrial motion. (See *Beard, supra*, 46 Cal.2d at p. 282 [trial court properly denied new trial motion when defendant did not exercise due diligence by serving known witness with subpoena]; *Goodale, supra*, 33 Cal.App.2d at pp. 87–88

misconduct]; *People v. Cowan* (2010) 50 Cal.4th 401, 459 [113 Cal.Rptr.3d 850, 236 P.3d 1074] [substitution of judge during course of trial]; *People v. Sanders* (2010) 189 Cal.App.4th 543, 552–553 [117 Cal.Rptr.3d 140] [prosecution witness refused to answer questions on recross-examination].) A defendant ordinarily may not obtain a mistrial based on his own conduct or conduct for which he is responsible. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1030 [47 Cal.Rptr.3d 467, 140 P.3d 775] (*Lewis & Oliver*); *People v. Hines* (1997) 15 Cal.4th 997, 1053–1054 [64 Cal.Rptr.2d 594, 938 P.2d 388].) A defendant, of course, is responsible for identifying, locating and, if necessary, serving subpoenas on witnesses he intends to call to testify on his behalf at trial. (See *Taylor v. Illinois* (1988) 484 U.S. 400, 415–416 [98 L.Ed.2d 798, 108 S.Ct. 646].)

[same].) On the other hand, as the People concede, it is not customary for a party to subpoena his own retained expert witness, and the record indicates Ticson's boss demanded service of a subpoena and three days' advance notice for the first time during trial. The record also indicates Dunn's counsel made several efforts to contact Ticson by telephone to arrange for her appearance at trial, but was "getting the runaround." Although on this record we have some doubt about Dunn's due diligence in securing Ticson's appearance at trial, we will defer to the trial court's finding, uncontested by the People, that Dunn's counsel was "diligent and acted very reasonably in trying to have this witness available on behalf of [his] client." This factor therefore would support granting Dunn's motion for mistrial (see *Davis, supra*, 31 Cal.App.3d at pp. 108–111 [trial court has discretion to grant new trial when defendant takes reasonable steps to secure attendance of material witness at trial but witness does not appear]); but because the issue is so close, we do not attribute much weight to it.

Second, Dunn did not use available alternative means to obtain testimony from Ticson. He did not request a continuance of the trial, present a declaration from or offer to depose Ticson, or seek a stipulation from the People as to Ticson's credentials or the substance of her expected testimony that could be read to the jury. The failure at least to explore these options supports the denial of Dunn's motion for mistrial. (See *Glover, supra*, 270 Cal.App.2d at p. 260 [new trial motion properly denied when defendant did not seek continuance to procure desired witnesses].)

Third, Dunn was not entirely free from fault with respect to Ticson's sudden and unanticipated inability to testify at trial. As already noted, Dunn's counsel knew before trial commenced that Ticson was scheduled to leave for vacation near the time of trial. He therefore should have communicated more effectively with her and made more definitive arrangements to secure her appearance at trial. Although ordinarily that would not include service of a subpoena on Ticson because she was a retained expert witness, the combination of counsel's inability to contact her during trial and her potential unavailability suggested the need for a subpoena. In addition, nothing in the record suggests the People bore any responsibility for Ticson's failure to appear at trial. Thus, because Dunn was at least partially responsible for Ticson's nonappearance but the People bore no such responsibility, this factor supports the denial of his mistrial motion. (See *Randle, supra*, 130 Cal.App.3d at pp. 292, 296 [motion for new trial properly denied when defendant was at fault for counsel's not communicating with or subpoenaing material witness]; see also *Lewis & Oliver, supra*, 39 Cal.4th at p. 1030 [defendant not entitled to mistrial based on courtroom commotion he caused].)

Fourth, and most importantly, Ticson's expected testimony would not have changed the result of the trial. As we interpret Dunn's counsel's offer of

proof, Ticson would have testified, contrary to Kaufhold, that the absence of abnormal findings on Minor's genital examination when Mother first took Minor to the hospital was inconsistent with the incident of molestation Minor described. Although Dunn contends Ticson's expected testimony concerned "the critical element of penetration," which he describes as "a 'significant contested issue in the case,' " Dunn has never clearly articulated his precise position regarding penetration, or how it conflicted with the People's position. At some times, Dunn's position seems to have been that the law required vaginal penetration for conviction.[6] At other times, his position seems to have been that Minor's claim that Dunn was "inside" her, which he interprets as vaginal penetration, must have been fabricated, because such penetration would have caused observable injury to her genitals.[7] On either theory, the testimony expected from Ticson would not have resulted in a different outcome at trial.

If Dunn was proceeding on the theory that penetration of Minor's vagina was required for conviction, he was wrong on the law. The conviction on count 1 required proof that Dunn had "sexual intercourse" with Minor (§ 288.7, subd. (a)), which required penetration of her labia majora, not her vagina. (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1364 [108 Cal.Rptr.2d 235]; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232 [182 Cal.Rptr. 406], disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8 [250 Cal.Rptr. 635, 758 P.2d 1165].) The offense charged in count 2 (lewd act on minor, § 288, subd. (a)) "was committed when [Dunn] placed his . . . exposed penis on [Minor's vulva], thereby touching her body with the specific intent to arouse, appeal to, or gratify his or her sexual desires. Penetration is irrelevant for this charge . . . ." (*In re*

---

[6] Several statements by Dunn's counsel suggest this was the defense theory. When Dunn's counsel advised the trial court he might have to request a mistrial, he represented that Ticson "felt that it was unlikely, highly unlikely that there was intercourse. *And 'intercourse' meaning penetration of the area beyond the labia majora into what would be called the mucosa, into that area which I think would correspond to what the law is.*" (Italics added.) He further stated that, in his view, penetration refers to "the interior of the labia majora. I don't think it's just the labia majora." Also, during closing arguments to the jury, Dunn's counsel argued that "contact with the labia majora is not enough. It has to penetrate the labia majora. In other words, *past the labia majora. Has to be internal.*" (Italics added.) Finally, in reminding the jury about the reasonable doubt standard, counsel argued: "It really does exist that it's beyond a reasonable doubt that there was actually penetration of the penis *past the labia majora. That it got past, got to the interior.*" (Italics added.)

[7] Other statements of Dunn's trial counsel are consistent with this interpretation of the defense theory. Counsel argued the molestation described by Minor—i.e., that Dunn was "on top of her, on more than one occasion, rocking back and forth inside of her to the point that it hurt"—had to involve more than slight penetration of Minor's vulva; it involved "more what seems like intercourse." He also represented, as part of his offer of proof, that Ticson would have testified that "it would be highly unlikely that things could have happened the way it was said that they happened and there not be any physical findings anywhere on [Minor's] genitalia."

*Asencio* (2008) 166 Cal.App.4th 1195, 1206 [83 Cal.Rptr.3d 400].)[8] The trial court correctly instructed the jury on these legal principles, including the modification requested by the People that labial penetration was sufficient for conviction on count 1 (see CALCRIM Nos. 1110, 1127), and the jury was bound to follow these instructions (§ 1126; *In re Stankewitz* (1985) 40 Cal.3d 391, 399 [220 Cal.Rptr. 382, 708 P.2d 1260]). Nothing in Ticson's expected testimony could have had any impact on the controlling law the jury had to apply. (See, e.g., *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635 [53 Cal.Rptr.2d 657] [expert witness may not give opinion on question of law].)

If instead Dunn was proceeding on the theory that Minor was claiming Dunn had inserted his penis into her vagina, Ticson's expected testimony that such insertion was inconsistent with the lack of any observable injury to Minor's genitalia would have added nothing of value at trial. As noted earlier, the People's expert witness, Kaufhold, had already testified she found no injuries when she examined Minor's genitalia, but she would have expected to see "serious tears" requiring surgical repair if Dunn had actually inserted his penis into Minor's vagina. Moreover, during closing arguments the prosecutor argued: "There's no evidence here and no one's saying that Mr. Dunn penetrated [Minor's] anatomical vagina. . . . [But] if his penis is rubbing up and down and it broke the barrier of her labia majora, that's penetration." Thus, because Ticson's expected testimony concerning penetration would not have contradicted Kaufhold's testimony or negated the People's legally sufficient theory of the case, Ticson's testimony would not have affected the result of the trial, a factor further supporting the trial court's denial of Dunn's mistrial motion. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 473 [79 Cal.Rptr.2d 408, 966 P.2d 442] [no abuse of discretion in denying new trial motion based on new testimony when defendant failed to show different result was probable on retrial]; *Goodale, supra,* 33 Cal.App.2d at

---

[8] Dunn contends Ticson's expected testimony also pertained to "the allegation of penetration as significant [*sic*] sexual conduct in count 2." There was no such allegation, however. During closing arguments, the prosecutor conceded "[t]here's no evidence here and no one's saying that Mr. Dunn penetrated [Minor's] anatomical vagina." Instead, the prosecutor argued the substantial sexual conduct required to prove the probation-denial allegation attached to count 2 consisted of masturbation. Masturbation encompasses any touching or contact, however slight, of the genitals of the victim or the offender done with the intent to arouse the sexual desires of the victim or the offender. (*People v. Terry* (2005) 127 Cal.App.4th 750, 771–772 [26 Cal.Rptr.3d 71]; *People v. Chambless* (1999) 74 Cal.App.4th 773, 783, 786 [88 Cal.Rptr.2d 444].) Minor's testimony that Dunn touched his "private part" to hers clearly established masturbation, which was sufficient to satisfy the "substantial sexual conduct" required to deny probation for the conviction under section 288. (§ 1203.066, subds. (a)(8), (b).)

pp. 88–89 ["An appellate court is not permitted to grant a new trial to allow a defendant to introduce evidence that is cumulative."].)[9]

Dunn argues, however, that "the 'battle of the experts' and the reasonable inferences therefrom created the realistic possibility" of a better outcome for him at trial. He bases this argument on the assertion that Ticson's "opinion regarding the question of penetration and the location of the [chancre] and whether it evidenced a penetrating injury" differed from Kaufhold's. We are not persuaded.

As noted, Kaufhold testified that Minor's description of the molestation and the absence of any injury to her genitalia observable on physical examination were consistent with Dunn's penis having penetrated Minor's labia, but not her vagina. Trial counsel represented that Ticson would also testify that the finding of no genital injury on physical examination was inconsistent with vaginal penetration, but conceded he had not discussed with her the possibility of labial penetration. And, contrary to Dunn's assertion on appeal, his trial counsel never proffered an opinion from Ticson regarding the significance of the location of the chancre. Counsel simply advised the trial court of his intention to ask Ticson to review the diagram of the chancre in Minka's notes, which *counsel* interpreted as showing "the chancre was on the outside of the labia."

█ Thus, Dunn's contention that Ticson's "expected testimony provided weight and significance to an argument that the touching of [Minor] was inadvertent, was associated with bathing, showering and/or cleaning the child, or, alternatively, that it was an impermissible touching that did not constitute penetration," has no factual foundation. Because a "defendant's rights to due process and to present a defense do not include a right to present to the jury a speculative, factually unfounded inference" (*People v. Mincey* (1992) 2 Cal.4th 408, 442 [6 Cal.Rptr.2d 822, 827 P.2d 388] (*Mincey*)), we reject Dunn's claim that his "due process rights became a hollow guarantee without Ticson's expected opinion testimony."[10]

█ In sum, all of the factors enumerated above (see pp. 1094–1095, *ante*), except the due diligence factor to which we attribute little weight (see

---

[9] In light of our conclusion that Ticson's expected testimony would not have affected the outcome of the trial, we need not and do not address the parties' arguments concerning the impeachment value of an article Ticson co-authored, in which it was reported that many child victims of sexual abuse who alleged vaginal penetration had normal physical examinations and that the victims had misinterpreted labial penetration as vaginal penetration.

[10] Dunn also had no due process right to present Ticson's expected testimony because, as noted, that testimony was duplicative of Kaufhold's and unresponsive to the People's theory of guilt. (See, e.g., *Mincey, supra*, 2 Cal.4th at p. 440 [defendant has no due process right to present evidence cumulative of prosecution evidence]; *People v. Babbitt* (1988) 45 Cal.3d 660, 685 [248 Cal.Rptr. 69, 755 P.2d 253] [exclusion of irrelevant evidence "did not implicate any

pp. 1095–1096, *ante*), support the trial court's denial of Dunn's motion for mistrial. We therefore conclude the absence of Ticson's testimony did not irreparably damage Dunn's chances of receiving a fair trial, and the court did not abuse its discretion in denying the motion. (*Clark, supra*, 52 Cal.4th at p. 990.)

In any event, even if we were to assume the trial court erred in denying Dunn's motion for mistrial based on Ticson's unanticipated unavailability to testify, we would conclude any such error was harmless. The evidence of Dunn's guilt, "though [partially] circumstantial, was tight and strong." (*People v. Stinson* (1963) 214 Cal.App.2d 476, 482 [29 Cal.Rptr. 695] (*Stinson*).) Minor testified Dunn rubbed his penis against her vulva, and her account of the molestation, as related by several witnesses, was consistent. Others living at the apartment with Dunn and Minor corroborated the molestation by testifying they heard Minor tell Dunn to get off her because she was not his girlfriend. Minor's development of a syphilitic chancre on the inner aspect of her right labium majus and Dunn's positive blood test for syphilis further incriminated Dunn. Against this evidence, Dunn offered only a single character witness, a former girlfriend who testified he never acted inappropriately toward her children, nieces and nephews, but conceded adults were always present whenever he was around the children. "Dropping [this testimony] on the scale causes no perceptible gravitation." (*Stinson*, at p. 482.)

On this record, whether we apply the federal standard requiring reversal unless the error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]), or the California standard requiring reversal only if it is reasonably probable the defendant would have obtained a better outcome in the absence of the error (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), we are confident Dunn would not have obtained a more favorable result had Ticson testified as his counsel represented she would. Accordingly, reversal of the order denying Dunn's motion for mistrial (and of the judgment) is not required. (See, e.g., *People v. Harris* (1994) 22 Cal.App.4th 1575, 1581 [28 Cal.Rptr.2d 317] [any error in denying mistrial motion harmless when "[e]vidence of [defendant's] guilt was overwhelming and undisputed at trial"]; *Stinson, supra*, 214 Cal.App.2d at p. 482 [same when evidence "points convincingly to guilt"].)

---

due process concerns"]; *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 725 [54 Cal.Rptr.3d 601] [no due process violation in exclusion of defense expert testimony that did not have "significant probative value"].)

### B. *Reversal Is Not Required for Ineffective Assistance of Counsel*

Dunn also contends the judgment must be reversed because his trial counsel's failure to serve Ticson with a subpoena to attend the trial violated his constitutional right to the effective assistance of counsel. We disagree.

Under both the Sixth Amendment to the federal Constitution and article I, section 15 of the state Constitution, a criminal defendant has the right to the effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839] (*Ledesma*).[11] To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability the result of the trial would have been different had counsel's errors not occurred. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052] (*Strickland*); *People v. Benavides* (2005) 35 Cal.4th 69, 92–93 [24 Cal.Rptr.3d 507, 105 P.3d 1099].) Where, as here, "a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland*, at p. 695; accord, *Ledesma*, at p. 218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694; accord, *Ledesma*, at p. 218.)

As we explained earlier (see pt. III.A.3., *ante*), we are confident the absence of Ticson's testimony did not affect the outcome of Dunn's trial. The evidence against Dunn was strong and largely undisputed. The testimony expected from Ticson would merely have duplicated part of the testimony of the People's expert and did not respond to the People's theory of guilt. Under these circumstances, even if counsel were deficient in not serving Ticson with a subpoena to appear at trial, it is not reasonably probable the jury would have had a reasonable doubt about Dunn's guilt. He is, therefore, not entitled to reversal based on ineffective assistance of counsel. (*Strickland, supra*, 466 U.S. at p. 692 ["deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution"]; accord, *Ledesma, supra*, 43 Cal.3d at p. 217.)

---

[11] The federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." (U.S. Const., 6th Amend.; see *Gideon v. Wainwright* (1963) 372 U.S. 335, 342–343 [9 L.Ed.2d 799, 83 S.Ct. 792] [holding 6th Amend. right to counsel applies in state court criminal trials].) The state Constitution similarly provides: "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense . . . ." (Cal. Const., art. I, § 15.)

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2012, S203208.