Filed 3/16/15  P. v. Moses CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076037 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00202) |
| v. | |
| LaSALLE RAMON MOSES, | |
| Defendant and Appellant. | |

Defendant LaSalle Ramon Moses appeals from a judgment of conviction following a jury trial, contending the trial court abused its discretion in denying his motion for a mistrial, which was premised on allegations the prosecutor committed misconduct in questioning a defense witness regarding defendant's prior act of domestic violence.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2012, while Jessica Celmer was walking her dog at her apartment complex, she ran into defendant and a group of his friends.  She saw that one

1

of the women in the group turned away, and, thinking the woman was afraid of her dog, Celmer said, " 'Don't worry, he won't hurt you.' " Defendant approached and challenged Celmer, saying "keep walking your dog, bitch," "keep going, and get out of here, you bitch." Celmer apologized, and defendant approached her with his arm raised as if he were going to hit her. Another member of defendant's group physically intervened but defendant kept calling her "bitch," told her to keep walking and he would hurt her if he saw her, and spit in Celmer's face.

On the evening of November 19, 2012, Alan Jones, the manager of the apartment complex informed a group of tenants and visitors who were gathered in an exterior stairwell that they had to quiet down and go inside. The group complied and Jones went back to his apartment. He heard noise outside and, through his window, saw defendant[1] with an unleashed pit bull. Jones had previously received complaints about a man with an unleashed pit bull at the apartment complex, so Jones went outside and told defendant, who was not a tenant, he would have to leave and take the dog with him. Defendant responded that Jones could not tell him what to do; Jones repeated his instruction to leave and take the dog off the property. Defendant approached Jones and hit him in the face, causing Jones to fall unconscious. Defendant continued to kick Jones after he had fallen. As a result of the encounter, Jones had metal plates surgically attached to his jawbone, had his mouth wired shut, has several broken teeth, has two smashed discs in his back, has loss of hearing in both ears, and has loss of vision in one eye. At the time of the incident, Jones was 62 years old, was five feet five inches tall, and weighed 150 pounds; defendant was 24 years old, was six feet tall, and weighed about 200 pounds.

---

[1]     Jones was unable to positively identify defendant as this man but thought it was possibly him, and Celmer positively identified the man as defendant. Neither Jones nor Celmer were able to identify defendant in photo lineups prepared by law enforcement officers.

Prior to trial, the People moved in limine to introduce evidence of defendant's prior misdemeanor conviction for domestic violence: (1) to impeach defendant should he testify, and (2) as evidence of defendant's propensity for violence if he were to offer evidence of Jones's propensity for violence. Defendant moved in limine to exclude evidence of defendant's prior violence unless he first proffered evidence of Jones's character for violence. The trial court ordered that no reference be made to defendant's domestic violence conviction.

The prosecutor then asked to be permitted to question Ecoiah Winston regarding defendant's prior domestic violence, if she testified on defendant's behalf, because Winston was the victim of that incident and the incident may be relevant to her bias, motive, or credibility in testifying on defendant's behalf. The trial court ruled that though she could be impeached with prior inconsistent statements about the assault of Jones, "unless there's something unexpected that comes from her testimony such as [defense counsel] . . . opens the door for some reason about the issue of domestic violence . . . your question of her would raise the same potentially inflammatory unduly prejudicial impact that, that the jury would conclude that this man [(defendant)] has hit his girlfriend so he was very likely to have the propensity to just hit . . . Mr. Jones. [¶] So I am not inclined to allow you to do that and, in fact, my order will be to exclude all reference and any reference to this 2011 act of domestic violence."

During trial, Winston, who was defendant's ex-girlfriend and a tenant of the apartment complex, testified on defendant's behalf. Her testimony indicated that Jones was the aggressor and that defendant only hit Jones one time. During cross-examination, there was an unreported sidebar conference with counsel, and then the prosecutor asked Winston if she had called the police in 2007 and spoken to them about defendant. Defense counsel sought another conference; the trial court instead asked if counsel had an objection; defense counsel asserted an unspecified objection; and the trial court overruled the objection. The prosecutor then asked Winston if she had spoken with the police about

3

defendant in April 2011, to which Winston responded that she was "not sure." The prosecutor asked again, "Isn't it true that you spoke to the police because you called them regarding an incident with the Defendant?" Before Winston could answer, the trial court sent the jurors out of the courtroom.

The trial court addressed counsel: "There was a discussion at side bar. [Defense counsel] raised a concern about any reference to a domestic violence incident between Ms. Winston and Mr. Moses in April of 2011. [¶] That concern is justified. [¶] The Court made a pretrial ruling to exclude any reference to domestic violence, a report of domestic violence, an incident thereof, between Ms. Winston and the Defendant. [¶] Now, Ms. Wilson [the prosecutor], I know that you were anxious to impeach the witness about her prior relationship with Mr. Moses, and you can do that. But I suggest to you, in fact, I am directing you, do not refer to 'police intervention, activity,' quote, unquote 'incident.' [¶] That suggests to the jury that the police were invited to their residence, or wherever the location was, to intervene between Ms. Winston and Mr. Moses. And then the further inference that it probably was domestic violence related. [¶] I think you can ask her, did she make certain utterances? Did she admit that she lived with the Defendant previously? Did she admit he was a resident there? His belongings were there. I don't know what it is that you have in your report. But stay clear of quote, unquote, 'incidents, arrests,' or reference to 'violence.' "

Defense counsel moved for a mistrial claiming the prosecutor had engaged in misconduct by asking the witness if she had called the police regarding defendant in light of the trial court's pretrial order and its order at the side bar conference minutes earlier directing the prosecutor not to talk about the domestic violence. The prosecutor responded that she had not stated the call related to domestic violence and that she did not violate the trial court's orders. The trial court found the prosecutor had not committed misconduct, that the "incident" referred to by the prosecutor had not been elaborated upon, that there was no suggestion it involved domestic violence, and that it could as

4

easily have suggested a dog being in the apartment or loud music. The trial court further denied the request for a mistrial, finding "there was nothing about the last question by the prosecutor that has denied [defendant] a right to a fair trial."

Ultimately, the jury found defendant guilty of assaulting Jones by means of force likely to produce great bodily injury, found true the allegation that defendant personally inflicted bodily harm on Jones in the commission of the assault, and found defendant guilty of battery against Jones resulting in serious bodily injury. The jury also found defendant guilty of assault and battery against Celmer.

The trial court sentenced defendant to an aggregate term of seven years in state prison. Defendant was also awarded statutory presentence credit and was ordered to pay statutory fines and fees.

## DISCUSSION

Defendant contends the trial court abused its discretion by denying his motion for a mistrial based on the prosecutor's question to Winston regarding a telephone call to the police about an "incident" involving defendant. He asserts this question inappropriately seeks inadmissible testimony regarding defendant's prior domestic violence in contravention of the trial court's orders. Though intentionally eliciting inadmissible testimony may constitute prosecutorial misconduct (*People v. Abel* (2012) 53 Cal.4th 891, 925) and "[p]rosecutorial misconduct may constitute an appropriate basis for a mistrial motion" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1154), here, the trial court found the prosecutor's question did not amount to prosecutorial misconduct. We need not decide the propriety of that ruling because even if the prosecutor did commit misconduct, defendant still has not shown prejudice to warrant a mistrial. Therefore, we conclude the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

"A motion for ' "mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction." ' " (*People v. Montes* (2014)

5

58 Cal.4th 809, 888.)  "Whether a particular incident is so prejudicial that it warrants a mistrial 'requires a nuanced, fact-based analysis,' which is best performed by the trial court.  [Citation.]  We review the trial court's order denying a motion for mistrial under the deferential abuse of discretion standard.  [Citation.]  'Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' "  (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094.)

Here, the prosecutor asked Winston a series of questions on cross-examination that defendant contends were sufficiently prejudicial to warrant a mistrial:

"Q:  You mentioned on Direct Examination that you are not currently the girlfriend of the Defendant, correct?

"A:  Correct.

"Q:  But you used to be, right?

"A:  A long time ago.

"Q:  Actually, you were as recently as April of 2011, weren't you?

"A:  No.

"Q:  Would looking at a report help refresh your memory regarding that?

"A:  Sure.

[Whereupon, the prosecutor provided the witness with a report to review.]

"Q:  [S]o I will ask you again:  You were dating him as recently as April 19th, 2011, correct?

"A:  No, I was not.

"Q:  Okay.  So you did speak with someone on that date and told that person that you had been dating the Defendant for four years, correct?

"A:  I don't recall that.

[Whereupon an unreported sidebar conference occurred.]

"Q: Do you recall calling the police in April of 2007, Ms. Winston?

"A: Yes.

"Q: And speaking to the police about the Defendant?

[Whereupon defense counsel raised an unspecified objection, which the trial court overruled. Nonetheless, the prosecutor continued questioning the witness without receiving a response to the previous question.]

"Q: Do you recall speaking to the police in April 2011, about the Defendant?

"A: At that address shown on the report?

"Q: I am just asking, in April of 2011, you spoke with police about Mr. Moses, didn't you?

"A: I am not sure.

"Q: Isn't it true that you spoke to the police because you called them regarding an incident with the Defendant?"

Defendant argues that when the prosecutor asked Winston whether she had spoken to the police in April of 2011 about defendant, the jury was made aware of defendant's prior act of violence against Winston, the effect of which was prejudicial. The trial court rejected this argument when it denied defendant's motion for a mistrial; the trial court found the "incident" had not been elaborated upon, there was no suggestion it was domestic violence, the witness denied she was in a relationship with defendant at that point, and the "incident" was as likely to involve some other type of incident involving a dog in the apartment or loud music. We find no error in this conclusion.

The trial court could reasonably conclude the jury was unlikely to draw from the prosecutor's questions the highly speculative inference that defendant had hit Winston, and the even more speculative inference that since defendant hit Winston, he has a violent character and therefore must have committed the charged acts of violence. Further, any danger the court would draw such an inference was dealt with by the trial court's instruction that the attorneys' questions are not evidence and that if a witness is

not permitted to answer a question, the jury "must ignore the question." Thus, any possible prejudice in permitting the question to be heard is harmless because it was dispelled by the trial court's instruction to the jury to disregard the unanswered question. (*People v. Abel*, *supra*, 53 Cal.4th at pp. 925-926.)

DISPOSITION

The judgment is affirmed.


                                                 ROBIE          , Acting P. J.


We concur:


     MURRAY     , J.


     HOCH      , J.