Filed 1/4/16  P. v. Cardoza CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT BARRIENTOS CARDOZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B259789<br>(Super. Ct. No. F464196001)<br>(San Luis Obispo County) |

Robert Barrientos Cardoza appeals an order and judgment determining him to be a sexually violent predator ("SVP") and committing him to the Department of State Hospitals for treatment.  (Welf. & Inst. Code, § 6600 et seq.)  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On August 24, 2011, the San Luis Obispo County prosecutor filed a petition to commit Cardoza as a SVP pursuant to Welfare and Institutions Code section 6600 et seq.  A jury trial followed, during which prosecution and defense expert witnesses testified regarding application of statutory SVP criteria.

*Prosecution Expert Witnesses*

Doctor Mark Patterson, a clinical psychologist in private practice, reviewed Cardoza's hospital and prison records, evaluations by other doctors, and court documents relating to Cardoza's arrests and convictions.  He also interviewed Cardoza.  Following his review of the court and hospital records, Patterson concluded that Cardoza was convicted

of two qualifying sexual offenses:  a 1978 attempted forcible rape and a 1980 forcible rape and forcible oral copulation that involved use of a knife.  Patterson briefly described the factual circumstances of the sexual offenses and also described sexual and other offenses committed by Cardoza during his incarceration.  Patterson opined that Cardoza suffers from "sexual preoccupation, . . . poor impulse control . . . and [has] obviously not learned from experience."

Patterson also opined that Cardoza suffers from chronic paraphilic disorder, characterized by his commission of violent sexual offenses.  Patterson opined that Cardoza also suffers from exhibitionism, frotteurism, antisocial personality disorder, and substance abuse.  In Patterson's opinion, substance abuse contributes to Cardoza's dangerousness and risk of reoffending, and the antisocial personality disorder results in Cardoza's impaired empathy and persistent criminality.

Patterson administered various tests to Cardoza to determine his likelihood of committing sexually violent crimes.  The test results suggested a moderate risk to a very high risk of reoffending.  Patterson considered Cardoza's test results, poor impulse control, lack of treatment, lack of insight into his disorder, and psychopathic personality traits to conclude that he presents a substantial risk of sexually violent predatory behavior.

Doctor Garrett Essres, a forensic psychologist employed by the Department of State Hospitals, reviewed Cardoza's hospital, court, and prison records and interviewed him twice.  Essres concluded that Cardoza was convicted of two sexually violent qualifying offenses and that he suffers from paraphilic disorder, substance abuse disorder, and antisocial personality disorder.  Essres rested his opinion upon Cardoza's criminal history and his sexual behavior while housed at the state hospital.  Essres also opined that Cardoza was likely to reoffend in a sexually violent predatory manner, based in part upon his past behavior, denial of a mental disorder, and disinterest in treatment.  In a written report, Essres concluded that Cardoza was "intensely sexually driven."

Doctor Amy Phenix, a forensic psychologist who developed the state protocol for evaluation of violent sex offenders, testified that paraphilia is a valid diagnosis in evaluating a violent sex offender.  She explained that paraphilia is a chronic and

2

longstanding mental disorder that may "ebb and flow." Phenix also stated that Cardoza's prison records reflect a striking history of rule violations and lack of cooperation with supervision. She opined that he is a high risk for reoffending despite his age (60 years).

*Defense Expert Witnesses*

Doctor Raymond E. Anderson, a forensic psychologist who specializes in issues regarding sex offenders, interviewed Cardoza on two occasions and reviewed the reports written by Patterson and Essres. Anderson disagreed with their conclusions that Cardoza suffers from paraphilia, frotteurism, and exhibitionism. Anderson stated that paraphilia is "not a permitted diagnosis" for a rapist. Anderson administered psychological tests to Cardoza and, on the basis of the tests results, concluded that he did not suffer from sexual psychopathy. He also concluded, based upon his own studies and that of the United States Department of Justice, that there was only a slight possibility that Cardoza would reoffend, in part due to his age, "good volitional control" and adequate self-discipline.

Doctor Robert Halon, a forensic psychologist, interviewed Cardoza twice and reviewed the reports written by Anderson and Essres. Halon concluded that Cardoza did not suffer from a mental disorder; his qualifying offenses were merely criminal behavior; and he does not present a risk of reoffending due to his age ("Age diminishes everything and it's the greatest diminisher of criminal behavior").

Doctor Theodore Donaldson, a clinical psychologist, testified that he read Patterson's evaluation and heard Phenix's testimony. He disagreed that dangerousness could be predicted accurately.

*Jury Verdict and Commitment*

On October 16, 2014, a jury found Cardoza met the statutory criteria of a SVP. The trial court ordered him committed to the Department of State Hospitals for treatment.

Cardoza appeals and contends that the trial court erred by: 1) permitting Patterson and Essres to testify with inadmissible hearsay evidence, and 2) denying a mistrial due to his expert witness's unavailability.

3

*I.*

Cardoza argues that the trial court erred by permitting the prosecution expert witnesses to testify with inadmissible hearsay evidence in violation of evidentiary rules and federal and California constitutional rights to due process of law.  He points to testimony regarding his many hospital rule violations, some involving sexual misbehavior, and his nonqualifying criminal arrests and convictions.  Cardoza claims the error is prejudicial pursuant to any standard of review.

In California, an expert witness may testify "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ."  (Evid. Code, § 801, subd. (b); *People v. Gardeley* (1996) 14 Cal.4th 605, 617-620; *In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness may base opinion on reliable hearsay including out-of-court declarations by others].)  An expert's overall opinion is "typically based on information drawn from many sources and on years of experience, which in sum may be reliable." (*People v. Gonzalez* (2006) 38 Cal.4th 932, 949.)[1]  In a SVP proceeding, an expert witness may consider documentary evidence containing multiple-level hearsay statements that relate to the issue of predicate offenses.  (*People v. Otto*, *supra*, 26 Cal.4th 200, 203.)  The trial court possesses considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of unreliable hearsay.  (*Gardeley*, at p. 619.)

The trial court did not err by permitting expert testimony regarding Cardoza's criminal history and hospital rule violations, including sexual misbehavior.  This evidence

---

[1] In a related matter, our Supreme Court is considering whether a defendant's Sixth Amendment right to confrontation is violated by an expert's reliance on testimonial hearsay.  (*People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, No. S216681;  *People v. Archuleta* (2014) 225 Cal.App.4th 527, review granted June 11, 2014, No. S218640.)  Although there is no constitutional right to confrontation in civil proceedings, "such a right does exist under the due process clause."  (*People v. Otto* (2001) 26 Cal.4th 200, 214.)

was properly before the jury for the non-hearsay purpose of showing the basis for the experts' opinions. (*People v. Gardeley*, *supra*, 14 Cal.4th 605, 617-620 [expert testimony may rest upon material not admitted into evidence as long as it is of a type that is reasonably relied upon by experts in the particular field in forming their opinions].) The details of Cardoza's psychosexual history, contained in his institutional records and relied upon by the experts, were relevant to his likelihood to reoffend. (*People v. Fulcher* (2006) 136 Cal.App.4th 41, 55-57 [SVP's due process rights not violated by allowing experts to testify regarding his prior conduct when explaining their opinions].) A prosecutor may properly examine an expert witness regarding the relevant information in the records that the witness relied upon in forming his opinion. (*People v. Martinez* (2001) 88 Cal.App.4th 465, 483.)

Moreover, the trial court properly gave a limiting instruction regarding the hearsay evidence. We presume that the jury understood and followed the instruction. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1096.)1

*II.*

Cardoza contends that the trial court erred by not granting a mistrial when he informed the court during trial that his expert witness, Doctor Allen Frances, would not be available for an additional 10 days due to a family emergency. He asserts that the court abused its discretion because Frances was a critical witness to his defense. Cardoza points out that Frances is a leading authority regarding the rejection of "paraphilic rapism" in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). (*People v. Smith* (2013) 216 Cal.App.4th 947, 952 [briefly summarizing Frances's views].) He adds that the error denied him due process of law pursuant to the federal Constitution and is not harmless beyond a reasonable doubt.

The trial court possesses discretion when deciding a motion for a mistrial due to the unavailability of an expert witness. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094 [discussing relevant factors in deciding mistrial motions due to unavailability of expert witness].) It should grant a motion for a mistrial only if a party's chances of receiving a fair trial have been irreparably damaged. (*Ibid.*) The mistrial analysis is a

factual one that is best performed by the trial court. (*Ibid.* [whether a particular incident is sufficiently prejudicial to require a mistrial involves a "'nuanced, fact-based analysis'"].) We presume that the court considered and understood applicable law regarding mistrials in rendering its ruling. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1101, overruled on another ground by *People v. Rundle* (2008) 43 Cal.4th 76, 151; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) On review, we examine the court's decision pursuant to a deferential abuse of discretion standard. (*Dunn,* at p. 1094.) Thus, reversal of the judgment is not required unless the court exercised its discretion in an arbitrary or unreasonable manner. (*Ibid.*)

Through no fault of Cardoza's counsel, Frances did not testify. (*People v. Dunn, supra,* 205 Cal.App.4th 1086, 1095 [counsel's diligence an important factor in mistrial determination].) Indeed, Frances appeared on the scheduled day and was flexible regarding his trial testimony until a family emergency precluded any testimony for 10 days.

Frances's expected testimony would not have changed the result of the trial, however. (*People v. Dunn, supra,* 205 Cal.App.4th 1086, 1095 [mistrial analysis includes nature of expert witness's testimony and its probable effect on outcome of trial].) Anderson testified that on five occasions, the DSM task force had rejected a diagnosis of paraphilia based upon rape and Halon testified that "nobody knows whether [paraphilia based on rape is an] actual valid mental disorder[]." Halon later explained: "[Paraphilia] is a whole different category; it's based on political, religious and social norms rather than medical or psychiatric evidence." Moreover, on cross-examination, the prosecution expert witness Phenix acknowledged that it is "well known" that "rape had been successfully rejected for introduction into any DSM," and that Frances merely summarized "everything and made it more notable to the general public." Thus, Frances's testimony would have been cumulative and would not have affected the outcome of trial.

The trial court's ruling also did not deny Cardoza due process of law. He presented a defense with other expert witnesses who testified that paraphilic rape is not a mental disorder within the meaning of the DSM. Frances's absence did not "irreparably

6

damage[]" Cardoza's right to a fair trial. (*People v. Dunn, supra*, 205 Cal.App.4th 1086, 1094.) Pursuant to any standard of review, any assumed error was harmless. (*Id.* at p. 1100 [discussion of standard of review assuming error in denying mistrial motion].)

The order and judgment of commitment are affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

7

Rita C. Federman

Superior Court County of San Luis Obispo

_____


Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.